886 F.2d 618
 110 A.L.R.Fed. 553, 28 Fed. R. Evid. Serv. 1463
 UNITED STATES of America
v.
PARCEL OF REAL PROPERTY KNOWN AS 6109 GRUBB ROAD, MILLCREEK
TOWNSHIP ERIE COUNTY, PENNSYLVANIA and Buildings
and Improvements Erected Thereon.
Appeal of Jane DiLORETO.
 Nos. 89-3201, 89-3202.
 United States Court of Appeals,
Third Circuit.
 Argued June 28, 1989.
Decided Oct. 2, 1989.
Rehearing and Rehearing In Banc Denied Dec. 15, 1989.
*
 
 John Paul Garhart (argued), Dunlavey, Nichols, Ward & Krill, Erie, Pa., for appellant.
 Paul J. Brysh, Constance M. Bowden (argued), U.S. Atty's, Office, Pittsburgh, Pa., for appellee.
 Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal from an order of forfeiture, the wife of a defendant convicted of several violations of narcotics statutes presents us with the question of whether the wife's knowledge of her husband's violations alone is sufficient to result in forfeiture of the marital property held by tenants by the entireties used to further the illegal transactions pursuant to Sec. 306(a) of the Comprehensive Crime Control Act of 1984, Pub.L. 98-473, codified at 21 U.S.C.A. Sec. 881(a)(7) (West 1989 Supp.), or whether the defense of lack of consent is still available. In addition, we are faced with the challenge to the district court's admission of hearsay evidence used to rebut the wife's innocent owner defense.
 
 
 2
 We conclude that the forfeiture statute provides that an owner or an individual with an interest in real property can avoid forfeiture by proving by a preponderance of the evidence that the illegal act or omission was committed or omitted either without his knowledge or without his consent. Further, we conclude that the district court erred by considering the hearsay evidence introduced by the government for any purpose other than to determine probable cause. Consequently, we will vacate the order of forfeiture entered by the district court and remand for further proceedings consistent with this opinion.
 
 I.
 
 3
 In April 1988, the government filed civil forfeiture proceedings pursuant to Sec. 306(a) of the Comprehensive Crime Control Act of 1984, 21 U.S.C.A. Sec. 881(a)(7) (West 1989 Supp.), seeking to have two parcels of real property seized and forfeited. The property consisted of two parcels; one located at 6109 Grubb Road, Erie County, the other located at 708-710 West Ninth Street, Erie, Pennsylvania. The Grubb Road parcel was the residence of the appellant Jane DiLoreto, her husband Richard and their five children. Prior to the purchase of the Grubb Road property, the DiLoretos lived at the West Ninth Street address, which was subsequently held as rental property.
 
 
 4
 The forfeiture proceedings came after an investigation by the Federal Bureau of Investigation, Drug Enforcement Administration, and Pennsylvania State Police disclosed that Richard DiLoreto used both parcels to further the trafficking of illegal narcotics. The proceedings were stayed pending outcome of the trial. Richard DiLoreto was convicted in a jury trial in the Western District Court of Pennsylvania of conspiring to possess with intent to distribute and distributing cocaine (21 U.S.C.A. Sec. 846), use of the telephone to facilitate the conspiracy (21 U.S.C.A. Sec. 843(b)), and failing to report income received from the sale of cocaine (26 U.S.C.A. Sec. 6723).
 
 
 5
 Thereafter, the stay was lifted and the forfeiture proceedings commenced. The DiLoretos conceded that there was probable cause to believe that the premises had been used to commit or facilitate the commission of narcotics violations. Jane DiLoreto contended, however, that she either did not have knowledge of the use or did not consent to the use of the property for facilitating narcotic violations.
 
 
 6
 At the forfeiture hearings, the government produced deposition testimony of several witnesses which was read into the record by the government's witness, Agent Kelly of the FBI. DiLoreto objected to the use of the deposition testimony because it was impermissible hearsay with regard to the issue of the innocent owner defense. The government stated the evidence was being introduced for the purpose of establishing probable cause for forfeiture pursuant to Sec. 881(a)(7).
 
 
 7
 The district court determined, based on all the evidence before it, that Jane DiLoreto had failed to carry her burden of showing innocent ownership by a preponderance of the evidence.[1] Consequently, the district court entered an order forfeiting the interest of Jane and Richard DiLoreto in the two parcels of property. In so doing, the district court also rejected the DiLoretos' arguments that: 1) 21 U.S.C.A. Sec. 881 was unconstitutional because it was essentially criminal in nature and violated the due process clause of the fifth amendment by putting the burden of proof on them; 2) Sec. 881 violated the bill of attainder clause of the Constitution and the eighth amendment prohibition against cruel and unusual punishment; and, 3) that the forfeiture amounted to double jeopardy because it imposed an additional punishment against Richard for his narcotics violations conviction. Jane DiLoreto appeals from the district court's order of forfeiture.
 
 
 8
 Because review of the district court's order involves the interpretation of legal principles and statutory provisions, our review is plenary. Thus, we reverse only if we determine that the district court committed an error of law. As to the district court's decision concerning the admissibility of evidence, we review for an abuse of discretion.
 
 II.
 A) Hearsay Evidence
 
 9
 In a forfeiture proceeding, the government must first meet its burden of showing probable cause for the seizure of the property. United States v. 55,518.05 In U.S. Currency, 728 F.2d 192 (3d Cir.1984). Probable cause is defined as a reasonable ground for belief in guilt. Ted's Motors v. United States, 217 F.2d 777 (8th Cir.1954). "The determination of probable cause in a forfeiture proceeding simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that" the property was used to further the trafficking of illegal narcotics. United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983). Probable cause can be established by hearsay. United States v. A Single Family Residence, 803 F.2d 625 (11th Cir.1986), and United States v. One 56-Foot Yacht Named Tahuna, 702 F.2d at 1283. Consequently, the government introduced the deposition testimony of five lay-witnesses through the testimony of a government agent who read the depositions into the record. Jane DiLoreto contends that this is the improper use of hearsay which deprived her of her right to cross-examine the witnesses.
 
 
 10
 Because forfeiture proceedings under 21 U.S.C.A. Sec. 881 are considered civil proceedings, not criminal, see United States v. Premises Known as 2639 Meetinghouse, 633 F.Supp. 979 (E.D.Pa.1986), and United States v. D.K.G. Appaloosas, Inc., 829 F.2d 532 (5th Cir.1987), apart from a due process challenge DiLoreto cannot invoke the sixth amendment right to confront the witnesses against her. In addition, because the question of whether the government has established probable cause to seek forfeiture depends not upon the admissibility of evidence upon which the government relies but upon the legal sufficiency and reliability of the evidence, DiLoreto cannot challenge the use of deposition testimony as impermissible hearsay as to the issue of probable cause. See United States v. One 56-Foot Yacht Named Tahuna, 702 F.2d at 1283 (affidavit in support of probable cause determination may be based on hearsay).
 
 
 11
 DiLoreto's counsel objected to the use of the deposition testimony at the forfeiture hearing because, having already conceded that there was probable cause to believe the property had been used to further narcotics violations, it was up to DiLoreto to prove her lack of knowledge or consent as part of the innocent owner defense. Thus, DiLoreto contends, the government's use of the deposition testimony was unnecessary to show probable cause. Instead, the government allegedly used the testimony of Agent Kelly reading the depositions to rebut DiLoreto's innocent owner defense. As such, DiLoreto argues, this was inadmissible hearsay.
 
 
 12
 Under the Federal Rules of Evidence, Rule 802 states that "hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court...." The two rules which list exceptions are Rules 803 and 804. Deposition testimony is admissible under Rule 804 where the declarant is unavailable to testify.[2] Generally, the burden of showing unavailability of a witness is placed on the proponent of the hearsay deposition testimony. See Complaint of Bankers Trust Co., 752 F.2d 874 (3d Cir.1984) and United States v. York, 852 F.2d 221 (7th Cir.1988). The unavailability of an individual to testify cannot be premised solely on the fact that the proponent of the testimony--here, the government--does not feel their presence is necessary.
 
 
 13
 The government argues that it cannot be forced to stipulate to probable cause and can introduce the hearsay testimony to meet the threshold issue of probable cause. We do not disagree with that argument--to that point. The government then argues that once the evidence is admitted it can be considered for any purpose. With that contention, the government is in error. See David B. Smith, Prosecution and Defense of Forfeiture Cases, [hereinafter Smith] p 11.03 (1988) ("government's hearsay is only admissible on the preliminary probable cause issue and not on the merits of the dispute").
 
 
 14
 It is well settled law that evidence which is relevant and admissible as to one issue, here probable cause, can be inadmissible as to another issue, i.e., to rebut the innocent owner defense. See McCormick on Evidence, Secs. 59, 60 (3d ed. 1984) and D. Louisell & C. Mueller, 1 Federal Evidence, Sec. 40, 41 (1977). When dealing with the admission of evidence for a limited purpose, the district court is advised to determine the real purpose of the proponent of the evidence as opposed to his ostensible or theoretical justification. Louisell & Mueller, 1 Federal Evidence Sec. 40, citing Hickock v. G.D. Searle & Co., 496 F.2d 444 (10th Cir.1974). Because DiLoreto conceded to the issue of probable cause, the government could have rested its case and required DiLoreto to prove innocent ownership by a preponderance of the evidence.
 
 
 15
 We note that even though the forfeiture proceeding is in the nature of a civil proceeding, it still results in the deprivation of property interests. As such, it must meet with minimum due process standards. See Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (an individual must be given an opportunity for a hearing before he is deprived of a significant property interest). It would be an empty gesture to give DiLoreto the opportunity for a hearing and then remove the purpose for the hearing by denying her the right to cross-examine the government's witnesses. During the hearing, Jane DiLoreto testified on her own behalf with regard to the innocent ownership defense. The government was afforded the opportunity to cross-examine her, but she did not receive the same opportunity to cross-examine because the witnesses whose depositions were read by Agent Kelly were not then available.[3]
 
 
 16
 Thus, the use of the depositions to rebut DiLoreto's innocent owner defense was the improper use of hearsay evidence admitted for the purpose of establishing probable cause. Because the district court determined that Jane DiLoreto had failed to meet her burden of proving her innocent ownership based on the credibility of all witnesses before it, including the depositions, we conclude that the district court erred by using the deposition testimony to rebut DiLoreto's defense thereby depriving her of the opportunity to cross-examine the government's deposition witnesses.
 
 
 17
 The only evidence admissible to determine Jane DiLoreto's innocent owner status was her own testimony. The district court erred in arriving at its findings of fact on this issue by relying in part on the government's hearsay depositions. We must remand for the district court to hold another forfeiture proceeding to determine whether Jane DiLoreto can prove her innocent ownership by a preponderance of the evidence.
 
 B) Knowledge or Consent
 
 18
 Jane DiLoreto's second argument is that the district court erred in concluding that she was not an innocent owner because she did not prove that she had no knowledge of her husband's narcotics violations. Under the civil forfeiture statutes, forfeiture will be ordered once the government establishes probable cause to believe the property sought to be forfeited was used in violation of the laws unless the claimant establishes her innocent ownership. The pertinent part of 21 U.S.C.A. Sec. 881 provides:
 
 
 19
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 26
 Thus, the owner must prove that the property was not so used, or that the use was without the claimant's knowledge or consent to avoid forfeiture. United States v. $55,518.05 In U.S. Currency, 728 F.2d 192 (3d Cir.1984).
 
 
 27
 The government argues that if the owner fails to show lack of knowledge by a preponderance of the evidence, that in itself is sufficient to subject the property to forfeiture. The government feels that the statute was the codification of existing common law. The language of the statute provides "that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C.A. Sec. 881(a)(7). We must determine whether Congress intended for knowledge alone to be sufficient to lose the "innocent owner" defense or whether DiLoreto is correct in her assertion that knowledge of the illegal usage does not deprive the owner of an interest when the owner can demonstrate the property was used without her consent.
 
 
 28
 The legislative history of Sec. 881(a)(7) is sparse. Even though (a)(7) was added to Sec. 881 with the passage of Pub.L. 98-473, in passing the Comprehensive Crime Control Act of 1984, Congress placed more emphasis on strengthening the criminal forfeiture statutes "as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." General Statement and Summary, Title III-Forfeiture, S. 1762, Comprehensive Crime Control Act of 1984, Pub.L. 98-473, 98 Stat. 1837, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374 (1985). The legislative history suggests that Congress saw the prior criminal forfeiture statutes as being too limited. First, several appellate court decisions had undercut the scope of the Racketeer Influenced and Corrupt Organizations statute (RICO) by interpreting the statute so as to prevent the criminal forfeiture of a defendant's profits. Second, prior existing forfeiture statutes did not address the defendant's ability to transfer, move or conceal assets prior to conviction because forfeiture could not be obtained until after conviction and entry of a judgment of forfeiture. 1984 U.S.Code Cong. & Admin.News at 3376. Thus, much of the legislative history is devoted to the explanation of the changes in the RICO and Continuing Criminal Enterprise (CCE) statutes which were intended to overcome the above mentioned shortcomings in prior forfeiture statutes. See generally 1984 U.S.Code Cong. & Admin.News at 3374-3404.
 
 
 29
 Civil forfeiture, which had been in existence for close to two centuries, was seen as an in rem proceeding which had to be brought in the district where the property was located. The property of a fugitive could be forfeited since the res was the defendant. Id. at 3376. Due to the lower standard of proof--probable cause--civil forfeiture proceedings were available where there may otherwise be insufficient evidence to go to trial or where the prosecution felt the case was weak. See generally Smith, supra at p 1.02. Hence, the profits could be removed from criminal activity even if the perpetrators could not be incarcerated.
 
 
 30
 Civil forfeitures could sometimes lead to harsh and surprisingly unjust results such as when the owner has no knowledge of the property's use for illegal purposes. A good example is the case of Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In 1971, the Pearson Yacht Leasing Company leased a yacht to two Puerto Rican residents. In 1972, Puerto Rican authorities found marijuana aboard the yacht and charged the lessees with violation of the Controlled Substances Act of Puerto Rico. The yacht was seized pursuant to Puerto Rican law which allowed the seizure and forfeiture of vessels used to transport or facilitate the transportation of controlled substances. The lessees were given ten days to respond to the seizure. When no challenge was made, the yacht was turned over to the Government of Puerto Rico for official use. Afterward, Pearson Yacht Company learned of the seizure and challenged the Puerto Rican statute on due process grounds. 416 U.S. at 665-68, 94 S.Ct. at 2082-84. The Supreme Court upheld the Puerto Rican statute, stating that "the Puerto Rican forfeiture statutes further the punitive and deterrent purposes that have been found sufficient to uphold, against constitutional challenge, the application of other forfeiture statutes to the property of innocents." 416 U.S. at 686, 94 S.Ct. at 2093.
 
 
 31
 Since 1790, however, the federal government has provided for administrative relief from forfeitures in cases where the penalty is incurred "without willful negligence". Smith, supra at p 15.01. Known as a remission statute, 19 U.S.C.A. Sec. 1618 permits the Secretary of the Treasury to remit or mitigate the penalties of forfeiture of "any vessel, vehicle, merchandise, or baggage seized under the provisions of" the Tariff Act of 1930 if he finds that the penalty was incurred "without the willful negligence" of the petitioner. Similar provisions exist for the DEA and the Department of Justice. Smith, supra at p 15.02. All hold the interested party to a negligence standard. Hence, the owner must show lack of negligence, or if there was negligence, mitigating circumstances which justify the remission of the forfeiture. The administrative decision to remit or mitigate is entirely discretionary. Id. Judicial review of such decisions are very narrow, generally limited to situations where an official "arbitrarily or erroneously" refuses to act on a petition. Id. at p 15.04.
 
 
 32
 The addition of Sec. 511(a)(7) to the civil forfeiture statute at 21 U.S.C.A. Sec. 881(a) was described in the Senate Report of Section 306 as follows:
 
 
 33
 The first amendment would add to the list of property subject to civil forfeiture set out in section 881(a) real property which is used or intended to be used in a felony violation of the Drug Abuse Prevention and Control Act. This provision would also include an "innocent owner" exception like that now included in those provisions permitting the civil forfeiture of certain vehicles and moneys or securities [Sec. 881(a)(6) ]
 
 
 34
 1984 U.S.Code Cong. & Admin.News at 3398. This is the only explanation given for the insertion of the language in Sec. 881(a)(7) providing a defense from forfeiture of real property used for illegal purposes without the owner's knowledge or consent.
 
 
 35
 Because reference is made to 21 U.S.C.A. Sec. 881(a)(6), we must also look to the legislative history of that section, which was added by section 301 of the Psychotropic Substances Act of 1978, Pub.L. 95-633, 92 Stat. 3768. Quite plainly, Congress stated that "[d]ue to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent." Joint Explanatory Statement of Titles II and III, 124 Cong.Rec. S17647 (October 7, 1978) reprinted at 1978 U.S.Code Cong. & Admin.News 9518, 9522 (1979).[4]
 
 
 36
 The innocent owner language resulted from an amendment to S. 2399 by Senators Nunn, Mathias and Wallop which was introduced through S. 1527 with the purpose of adding a provision "to make it clear that a bona fide party who has no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur." Remarks of Senator Sam Nunn, 124 Cong.Rec. 23057 (July 27, 1978). Senator Culver of Iowa also noted
 
 
 37
 that the original language could have been construed to reach properties traceable to the illegal proceeds but obtained by an innocent party without knowledge of the manner in which the proceeds were obtained. The original language is modified in the proposed amendment in order to protect the individual who obtains ownership of proceeds with no knowledge of the illegal transaction.
 
 
 38
 Remarks of Senator Culver, 124 Cong.Rec. 23056 (July 27, 1978).
 
 
 39
 We must construe the language of the statute keeping in mind the congressional purpose in enacting forfeiture statutes and that Congress does not generally place language in a statute without purpose. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("in construing a statute we are obliged to give effect, if possible, to every word Congress used.")
 
 
 40
 The construction of the innocent owner defense is a case of first impression in this court. Our research reveals only one published opinion in which a federal court has examined whether the "knowledge or consent" phrase in Sec. 881(a)(7) has established independent defenses. In United States v. Certain Real Property & Premises Known as 171-02 Liberty Avenue, Queens, New York, 710 F.Supp. 46 (E.D.N.Y.1989), [171-02 Liberty Avenue ] the district court for the Eastern District of New York was presented with a case where the owner of property in a high drug-trafficking area knew that his property was being used as a base to sell "crack" although he received no profit from the dealings. The government claimed that the owner's knowledge was sufficient to lose the innocent owner defense and forfeit the property. The owner countered that the statute provided an innocent owner defense to an individual who could show lack of "knowledge or consent" and therefore it was enough for him to establish that he did not consent to the illegal use of his property. 710 F.Supp. at 48-49.
 
 
 41
 The district court in 171-02 Liberty Avenue concluded that even if an owner has knowledge of the illegal use of his property, he may nonetheless prove innocent ownership by showing a lack of consent. The court reasoned that the use of or in the statute (knowledge or consent) means that each word must be given its independent and ordinary meaning. 171-02 Liberty Avenue, 710 F.Supp. at 50. In so ruling, the court relied on the canons of statutory construction as enunciated by the Supreme Court. See Reiter, 442 U.S. at 339, 99 S.Ct. at 2331 ("canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings unless the context dictates otherwise"); and, FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (terms connected by a disjunctive must be given separate meaning).
 
 
 42
 Reading "knowledge or consent" as the canons of construction require, we conclude that Jane DiLoreto can show innocent ownership by proving by a preponderance of the evidence that the illegal use of the property occurred either without her knowledge or without her consent.
 
 
 43
 We hold that the district court erred by concluding that Jane DiLoreto lost her innocent owner status because she failed to prove lack of knowledge by a preponderance of the evidence when the defense of lack of consent was still available. Indeed, since it is likely that the district court's determination was based on improperly admitted evidence, we would still have to remand on this issue for a proper determination of the defense of lack of knowledge. We will vacate and remand to the district court to allow Jane DiLoreto to produce evidence to meet her burden of proving innocent owner status by a preponderance of the evidence.
 
 III.
 
 44
 At the new hearing, Jane DiLoreto's burden will be to prove at least one negative under the statutory scheme. However, this is not a case where the district court will be required to determine whether Jane DiLoreto's evidentiary burden may be reduced because the opposing party has peculiar knowledge of the "negative" facts.[5] Clearly, the no knowledge and no consent factors identified in 21 U.S.C.A. Sec. 881(a)(7) encompass subject matter that is, almost by definition, within Jane DiLoreto's awareness.
 
 
 45
 The issues presented at the new hearing will, of course, be factual. It will be for the district court to decide what, if anything, beyond testimonial denials[6] by Jane DiLoreto will be required to make out a prima facie case of her innocent owner defense. If such a showing is made, then the government must be afforded an opportunity to offer admissible rebuttal evidence. It is not suggested by Jane DiLoreto that the government is barred from doing so because of its failure to tender such evidence at the first hearing.
 
 
 46
 In deciding the innocent owner defense, the court will be expected first to determine whether Jane DiLoreto carried her factual burden of showing no knowledge.[7] While the statute is worded in the negative, affirmative evidence of knowledge will be relevant to such a determination. If the court finds that Jane DiLoreto carried her burden, then at least in the present situation, where both parties are in possession, she should ordinarily prevail.
 
 
 47
 If Jane DiLoreto does not establish her no knowledge defense, the district court will then be required to decide whether she established her no consent defense. In that process, evidence of knowledge of the illegal activity will again be a relevant fact, despite Jane DiLoreto's burden of showing a negative, because it would be difficult to deal with the no consent issue in the absence of a knowledge predicate. In that connection, a failure to prove the first defense, i.e., no knowledge, does not itself constitute proof of knowledge. However, we would note that knowledge can imply consent under appropriate circumstances.
 
 
 48
 What, if any, applicability the following dictum in Calero-Toledo v. Pearson Yacht Co., 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974) has to the innocent owner defense will be for the district court to decide: "that he [claimant] had done all that reasonably could be expected to prevent the proscribed use of his property...." The problem is particularly daunting where, as here, entireties property is involved. Certainly the government's suggestion that an innocent spouse should seek partition of the entireties property not only lacks legal substance but, in any event, defies marital reality.
 
 
 49
 In making these observations, we do not intend to minimize the difficult task that will be presented to the district court in arriving at its factual conclusions. The problem is particularly acute with respect to the no consent issue when no pertinent evidence is available. The illegal use of marital property by the spouse of the claimant can present a classic example of that situation. Certainly in resolving such a claim, emotional considerations must be kept in proper perspective lest they be employed subconsciously to negate the objectives of the forfeiture statute and to encourage the titling of such property to that end.
 
 IV.
 
 50
 We conclude that the district court erred by admitting deposition testimony introduced by the government to show probable cause and by using it to conclude that Jane DiLoreto had failed to prove her innocent owner defense because she knew of her husband's use of the entireties property for narcotics violations. In addition, the district court erred by equating knowledge of the narcotics violations to consent. Both of these errors require that we vacate paragraph 3 of the district court's order of March 14, 1989 and remand to the district court for another forfeiture hearing at which the government's probable cause burden will be taken to have been established. The innocent owner hearing and determination will follow in order for Jane DiLoreto to have an opportunity to show lack of knowledge or lack of consent to the use of the property for narcotics violations. Only if the district court should find in favor of Jane DiLoreto on her innocent owner defense, would it be necessary for the court to determine, under governing law, the extent of her interest in the entireties property.
 
 
 
 *
 See 890 F.2d 659
 
 
 [1]
 The district court stated in its findings of fact that:
 Based upon all of the evidence presented herein, and with close attention to the credibility of all of the witnesses, we find that Jane either knew of her husband's involvement in the sale of cocaine, or else deliberately blinded herself to it.
 United States v. Parcel of Real Property Known as 6109 Grubb Road etc., 708 F.Supp. 698, 704 (W.D.Pa.1989). We question the district court's findings based on the credibility of absent witnesses. See infra.
 
 
 [2]
 Rule 804, Fed.R.Evid. states in pertinent part:
 (a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant--
 * * *
 (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
 (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3) or (4), the declarant's attendance or testimony) by process or other reasonable means.
 A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
 Fed.R.Evid. 804
 
 
 [3]
 Jane DiLoreto and her counsel were both present at the taking of the depositions at issue. Counsel explained at oral argument that he believed the depositions were for discovery purposes only and were not admissible at the forfeiture hearing, therefore his questioning strategy was different than that which he would have pursued at the forfeiture hearing. We agree that counsel cannot be forced to tip his hand and reveal his strategy nor be forced to lose his advantage in an adversarial setting where credibility of the witnesses is an issue
 
 
 [4]
 In addition, the report stated
 Finally it should be pointed out that no property would be forfeited ... to the extent of the interest of any owner of such property. The term "owner" should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized. Specifically, the property would not be subject to forfeiture unless the owner of such property knew or consented to the fact that:
 
 
 [1]
 the property was furnished or intended to be furnished in exchange for a controlled substance in violation of law,
 
 
 [2]
 the property was proceeds traceable to such an illegal exchange, or
 
 
 [3]
 the property was used or intended to be used to facilitate any violation of Federal illicit drug laws
 1978 U.S.Code Cong. & Admin.News at 9522-23.
 
 
 [5]
 Saunders, The Mythic Difficulty In Proving a Negative, 15 Seton Hall L.Rev. 276 (1985)
 
 
 [6]
 We do not mean to imply that the district court is required to believe the claimant's testimony even if uncontradicted. Matter of Decker, 595 F.2d 185, 190 (3d Cir.1979); 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2526 (1971)
 
 
 [7]
 No issue is raised as to whether a claimant must prove absence of actual knowledge under the statute. See United States v. Four Million, etc., 762 F.2d 895, 906-07 (11th Cir.1985)