**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF REAL ESTATE LOCATED AT 13430 S.W. 1ST STREET, MIAMI, DADE COUNTY, FLORIDA, together with all appurtenances thereto and attachments thereon, Defendant.**

No. 90–1252–Civ.

United States District Court, S.D. Florida.

April 3, 1992.

Michele L. Crawford, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Richard Docobo, Miami, Fla., for defendant.

## FINAL JUDGMENT FOR CLAIMANT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

This is a civil action brought by the United States of America for forfeiture of a certain parcel of real estate which includes a single family residence, located at 13430 S.W. 1st Street, Miami, Florida. The Government seeks forfeiture of this property pursuant to 21 U.S.C. §§ 881(a)(6) and (7).

The case was tried non-jury by this Court on March 23–26, 1992. The Court has considered all of the testimony and evidence presented at the trial, as well as the entire record in this matter, and being otherwise advised in the premises, herein enters its findings of fact and conclusions of law.

*Findings of Fact*

1. The legal description of the defendant real property sought to be forfeited is as follows:

Lot 38, in Block 1, of University Park East, Section One, according to the plat thereof, recorded in Plat Book 104, at page 99, of the Public Records of Dade County, Florida.

2. The defendant real property is titled in the name of Magaly Fernandez by virtue of a Warranty Deed Recorded in Dade County Official Records Book 13818, page 3338 on September 12, 1988.

3. This defendant real property was sold to Magaly Fernandez by Claimant Siria Vinals and her husband Carlos Vinals [1] on September 8, 1988, for a purchase price of $100,000. Claimant Siria Vinals is the only claimant left in this action.

4. Carlos and Siria Vinals were paid $10,000 in cash, and they accepted a Mortgage Note in the amount of $90,000 and a Mortgage Deed executed by Magaly Fernandez.

5. The Mortgage Deed was duly recorded on September 9, 1988 in Official Records Book 13816, Page 2799 of the Public Records of Dade County, Florida. The Mortgage Deed constituted a first mortgage lien on the defendant real property.

6. On November 4, 1989, Teddy Suarez met with confidential informant Hector Hurtado of the Drug Enforcement Administration (DEA) at the defendant real property to negotiate for the sale and delivery of 27 kilograms of cocaine. On that date, Suarez displayed a quantity of cocaine to Hector Hurtado as a sample.

7. Hector Hurtado told DEA Special Agent Michael Powell that Suarez had told him (Hector Hurtado) that he had recently purchased the defendant residence and that he had placed the residence in Magaly Fernandez's name for "safety's sake." Suarez allegedly further told Hector Hurtado that he had paid the prior owners $50,000 in cash to consummate the transaction.[2]

8. On November 14, 1989, Suarez met with Hector Hurtado and his brother George Hurtado at the defendant property, where he showed both men one kilogram of cocaine.

9. On November 15, 1989, George Hurtado returned to the defendant property, whereupon Suarez led him across the street to another house to show him six more kilograms of cocaine.

10. When Suarez emerged from the house, he was arrested for violation of federal narcotics laws. He was later convicted.

11. Claimant Siria Vinals did not take part in any of the above-mentioned transactions, nor was she present at the defendant residence when any of these events took place.

12. The evidence adduced at trial showed that Carlos and Siria Vinals had made several real estate investments prior to the sale of the defendant property, and had derived much of their annual adjusted gross income from interest on mortgage notes. The testimony of Siria Vinals also demonstrated that she had sound knowledge and understanding of real estate transactions.

13. There was no evidence offered at trial to conclusively show that the Vinals were living a lavish lifestyle above and beyond their lawfully reported means. This finding is based on their apparently modest lifestyle, the Court's examination of their yearly tax returns dating back to 1983, their investment portfolio, and Siria Vinals' testimony as to her husband's income before 1983.

*Conclusions of Law*

A. 21 U.S.C. § 881(a)(7) requires the forfeiture of any real property and improvements thereon when there is probable cause to believe that the property was used to facilitate a violation of 21 U.S.C. § 802, *et seq.*, punishable by more than one year's imprisonment.

B. 21 U.S.C. § 881(a)(6) requires the forfeiture of any real property which constitutes proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value for a controlled substance.

C. The parties have stipulated that Claimant Siria Vinals, as a mortgagee of

---

1. Carlos Vinals was originally a claimant in this action as well, but agreed at trial to waive his claim. His claim was therefore stricken by the Court, ore tenus, at trial.

2. These fact were offered at trial through the testimony of Special Agent Powell as hearsay evidence, admissible *only* for the purposes of establishing probable cause for forfeiture. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties, Ala.,* 941 F.2d 1428, 1440 (11th Cir.1991).

the defendant property, has standing to contest the forfeiture of the defendant property.

■ D. The United States bears the initial burden of establishing that probable cause exists for forfeiture of the defendant property. *United States v. Four Parcels of Real Property*, 941 F.2d at 1438.

■ E. "Probable cause" for forfeiture is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986).

F. At trial, Claimant Siria Vinals conceded that probable cause for forfeiture existed under both 881(a)(6) and 881(a)(7), and the evidence offered at trial was clearly sufficient to establish probable cause.

■ G. Once probable cause is established, the burden of proof shifts to the claimant to demonstrate by a preponderance of the evidence that he or she is an "innocent owner." *A Single Family Residence*, 803 F.2d at 629.

■ H. Where probable cause has been established under both 881(a)(6) and 881(a)(7), the claimant must show that she is an innocent owner under *both* theories of forfeiture. A mortgagee of the defendant property may carry her burden by showing that she had no actual knowledge that the defendant property had been used to facilitate a drug transaction and that she had no actual knowledge that the property had been purchased with proceeds of a drug transaction. *United States v. Four Parcels of Real Property*, 941 F.2d at 1442; *A Single Family Residence*, 803 F.2d at 629.

■ I. Importantly, only the mortgagee's actual knowledge at the time of the execution of the mortgage is relevant. Subsequent awareness of the property's connection to a drug transaction is irrelevant in determining whether the mortgagee is an innocent owner.

*Innocent Owner Defense—§ 881(a)(7)*

■ Siria Vinals accepted a mortgage note from Magaly Fernandez in September 1988. The events which gave rise to the instant forfeiture proceedings began in November 1989, when Teddy Suarez first met with the confidential informant at the defendant property to negotiate a drug transaction. The defendant property was therefore used to "facilitate" a drug transaction under § 881(a)(7) in November 1989, a year after the property was sold by Claimant Siria Vinals to Magaly Fernandez. In September 1988, Claimant Siria Vinals could not possibly have had actual knowledge that the defendant property would be used to facilitate a drug transaction in November 1989. Accordingly, she is an "innocent owner" under the 881(a)(7) "facilitation" theory of forfeiture.[3]

*Innocent Owner Defense—§ 881(a)(6)*

At trial, Claimant Siria Vinals testified that she had no actual knowledge at the time of the sale of the defendant property that she was being paid with money derived from proceeds of a drug transaction. She was paid with $10,000 in cash, not an unusually large amount for a down payment on a house. Moreover, she accepted a mortgage note for $90,000 secured by a first lien on the house, not a transaction to raise the Court's suspicions. Siria Vinals also testified that she learned of Teddy Suarez's involvement in the cocaine trade only after he was arrested for the above-described transaction. This Court finds that the direct testimony of Claimant Siria Vinals, by itself, is sufficient to satisfy her burden of proving lack of actual knowledge by a preponderance of the evidence.

Because no direct evidence existed that Siria Vinals had actual knowledge, at the time that she sold the defendant residence, that she had been paid for her property with ill-gotten "drug money," the United States attempted to rebut her testimony through circumstantial evidence. In particular, the United States attempted to adduce

---

**3.** The failure of the United States to offer *any* evidence to prove that Siria Vinals knew of a drug transaction that had taken place at the defendant property was an implicit recognition that the United States was not entitled to final judgment of forfeiture under § 881(a)(7).

evidence that: 1) Siria Vinals knew at the time she sold the residence that Teddy Suarez was the real source of funds behind its purchase; 2) that she accepted a large cash payment "under the table" for the residence; 3) that she made large unexplained deposits in a Southeast Bank account in Key Largo, Florida; and 4) that her husband Carlos Vinals had something to hide by refusing to testify and assert his claim and interest in the residence.

■ First, the United States presented evidence that Siria Vinals, in an answer to an interrogatory propounded by the United States, admitted that she knew of Teddy Suarez. However, this answer does not suggest that she necessarily knew that Suarez was involved in the drug trade before the November 1989 drug transaction that landed Suarez in jail, especially in light of the live testimony that she gave at trial. In fact, the United States presented no evidence to suggest that she knew of his involvement in the cocaine trade prior to her sale of the defendant residence in 1988.[4]

Second, the United States introduced evidence, through the testimony of Special Agent Powell, that Teddy Suarez bragged to Hector Hurtado about having paid $50,-000 "under the table" for the defendant residence. This, the United States contended, proved that Siria Vinals knew that she was being paid "drug money" for the house. Aside from the serious doubts that this Court has about the credibility of any statements made by Teddy Suarez, this hearsay statement is inadmissible to rebut Siria Vinals "innocent owner" defense. *United States v. Parcel of Real Property Known as 6109 Grubb Road, Millcreek Township Erie Co., Pa.*, 886 F.2d 618, 622–23 (3rd Cir.1989); *See also United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties, Ala.*, 941 F.2d 1428, 1440 (11th Cir.1991).

Third, the United States introduced bank records of the Vinals delineating the large deposits that they made in 1989 and be-

yond, arguing that these large deposits totalling in excess of $70,000 were unexplainable and inconsistent with the adjusted gross income figures that they reported on their tax returns for 1987–89. On re-direct examination, however, Siria Vinals adequately reconciled these deposits with their adjusted gross income in years prior to 1987, with investment income from the sale of other parcels of real estate, with certificates of deposits that had matured, and with other legitimate business transactions.

Fourth, the United States offered into evidence a portion of the deposition of Carlos Vinals, in which he asserted his Fifth Amendment privilege in refusing to answer any questions regarding his knowledge and association with Teddy Suarez. The United States argued that this refusal to testify and his failure to appear at the forfeiture proceedings suggests that Carlos Vinals has something to hide. The United States, however, never subpoenaed Carlos Vinals to testify. This Court declines to draw any negative inferences from Carlos Vinals' refusal to testify, as there are a number of legitimate reasons why he might have declined to do so.

The evidence offered by the United States is insufficient to rebut the testimony of Siria Vinals, and does not offset or detract from this Court's finding that she has demonstrated lack of "actual knowledge" by a preponderance of the evidence. This finding is based on the testimony of the witnesses, the demeanor of the witnesses on the stand, and the lack of direct evidence of "actual knowledge."

*Conclusion*

This Court finds and holds that Claimant Siria Vinals has satisfied her burden and is an "innocent owner" of the Mortgage and Note executed in the amount of $90,000, and that such interest in the defendant residence is exempt from forfeiture. However, the evidence is such to show, and this Court finds, that except for the Claimant's interest, the United States has established

---

**4.** While the Claimant may have stipulated that there was probable cause to believe that the residence had been purchased with drug money, under 881(a)(6), this does not mean that the Claimant actually knew of this illegality in 1988 when she sold the house.

a sufficient basis for forfeiture of the fee interest in the defendant property.

It is therefore ORDERED AND AD-JUDGED that the defendant property is hereby FORFEITED to the United States of America *subject* to the valid first Mortgage held by Claimant Siria Vinals.

DONE AND ORDERED.