PSM-172                                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1546
_____

UNITED STATES OF AMERICA

v.

ALL RIGHT, TITLE AND INTEREST, including all
appurtenances and improvements thereon to the real property
known as 8 Bayview Terrace, Greenbrook, Somerset County,
New Jersey; CONTENTS OF ACCOUNT NUMBER 6905-8830
HELD IN THE NAME OF IMRE AND MARIA PAPP, LOCATED
AT CHARLES SCHWAB AND CO, INC 1170 ROUTE 22 E,
BRIDGEWATER, NJ; CONTENTS OF ACCOUNT NUMBER
0560328351 HELD IN THE NAME OF UNITRADE UNLIMITED,
LOCATED AT INDEPENDENCE COMMUNITY BANK
(FORMERLY BROAD NATIONAL BANK) 905 BROAD ST,
NEWARK, NJ; CONTENTS OF ACCOUNT NUMBER 0002721465
HELD IN THE NAME OF IMRE AND MARIA PAPP, LOCATED
AT SUMMIT BANK, 630 FRANKLIN BLVD, SOMERSET, NJ,

*Imre and Maria Papp, Appellants

*Pursuant to Fed. R. App. Pro. 12(a)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-cv-01454)
District Judge: Honorable Dickinson R. Debevoise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 13, 2010

Before:  FUENTES, GREENAWAY, JR. and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

_____

OPINION

_____

PER CURIAM

Appellants Imre and Maria Papp appeal pro se from the District Court's order granting summary judgment to the United States in this civil *in rem* forfeiture action. For the foregoing reasons, we will affirm.

Imre and his late brother Endre forged medium-term fixed-rate notes in the name of Seeland Bank in Europe, and cashed the notes and their attached coupons.[1] The fraud was discovered after Seeland Bank was purchased by Swiss Bank, which ultimately became UBS AG following a merger with Union Bank of Switzerland. After an investigation by Swiss authorities, Endre was arrested in that country, and a warrant for Imre's arrest in New Jersey was issued by a Swiss court. At the request of Swiss authorities and on application by the Federal Bureau of Investigation, the District Court issued an arrest warrant on August 24, 1999. Extradition proceedings were initiated, and,

_____

[1] Endre was employed by Seeland Bank and was responsible for monitoring medium, fixed-rate notes. He had access to blank, original paper in the name of the bank and control, identifying numbers corresponding to Seeland Bank notes and coupons. The forgeries were printed on original Seeland Bank paper, and contained identification numbers that corresponded to actual Seeland Bank notes. After Endre left his employment due to a restructuring of his department the forgeries were discovered. In order to conceal his illegal activities, Imre obtained a fraudulent United States passport under the name "James Galambos."

on January 20, 2000, the District Court ordered that Imre be delivered to Swiss authorities to stand trial.

In connection with their prosecution of Imre and the other members of his family, Swiss law enforcement authorities confiscated property located in various countries in Europe belonging to individuals and entities that participated in the forgeries. Swiss law enforcement authorities also requested that U.S. officials confiscate property belonging to Imre located in New Jersey. On March 28, 2000, the United States initiated civil forfeiture proceedings in United States District Court for the District of New Jersey against certain real and personal property belonging to Imre and his wife Maria, including a residential dwelling located at 8 Bayview Terrace in Greenbrook, New Jersey, and the contents of three bank accounts held in New Jersey: Account No. 6905-8830 at Charles Schwab & Co., Inc., Account No. 0560328351 held by Unitrade Unlimited at Independence Community Bank, and Account No. 0002721465 held at Summit Bank. The government alleged in a Verified Complaint that the property was the fruit of Imre and Endre Papp's illegal conduct, in particular, the fraud perpetrated on Swiss Bank, UBS's predecessor.

In total, the government alleged that over $1.1 million was transferred or carried into the United States and deposited to accounts held by Imre and/or Maria between January, 1996 and October, 1998. Some of the money was funneled through European companies the brothers controlled, such as the roughly $345,000 that was deposited in the

Summit Bank account by a property management company in Lichtenstein. Other transfers included, but were not limited to, $49,985 sent by Imre to the Summit Bank account on September 23, 1996; $408,970 sent through a wire service to the Independence Community Bank account on September 27, 1996; $69,985 sent by a company known as "Die Wache" and deposited in the Summit Bank account on October 28, 1997; $24,985 sent by a company known as "Redmont Company Limited" and deposited in the Summit Bank account on December 10, 1997; $49,975 sent by a company known as "Hobson Finance Limited" and deposited in the Summit Bank account on February 17, 1998; $39,917.87 sent by Endre and deposited in the Summit Bank account on April 1, 1998; $149,985 sent from Hobson Finance Limited and deposited in the Summit Bank account on May 29, 1998; $12,485 sent by Endre and deposited in the Summit Bank account on September 15, 1998; and $150,000 sent by Endre and deposited in the Summit Bank account on May 27, 1998.

The latter transfer from Endre on May 27, 1998 was particularly incriminating. On May 24, 1998, Imre brought $305,300 in cash into the United States, $100,000 of which was seized by United States Customs officials because it was not properly declared. During a telephone conversation between Endre and Imre, which was intercepted by Swiss authorities on May 24, 1998, Imre informed Endre that $100,000 of the currency had been seized, and Imre stated that, "[I]n order to be able to finish the house, I need another 150 thousand." Three days later, $150,000 was wire transferred from

Lichtenstein to the Summit Bank account.

Imre and Maria filed an answer to the civil forfeiture complaint in which they asserted claims to the property. On March 8, 2002, the District Court entered a Consent Order staying the forfeiture action pending the outcome of the Swiss criminal proceedings against Endre and Imre.

Meanwhile, on March 16, 2001, Imre and Endre were convicted by a Swiss trial court of several offenses under the Swiss Penal Code. Imre was found guilty of "professional fraud" committed from September, 1994 to the Fall of 1997 to the detriment of UBS in the amount of at least 16.8 million Swiss Francs, forgery of documents committed multiple times from April, 1994 to March, 1997, and "professional money laundering" committed from September, 1994 through August 24, 1999 in New Jersey and elsewhere, totaling several million Swiss Francs. Supp. App. 38. Imre was acquitted of the charge of "money laundering" with respect to the purchase of an apartment in Budapest, the construction of a "mansion" in New Jersey, and the purchase and expansion of a house in Budapest. Id. at 37-38. Those properties were released. The court awarded UBS restitution in the amount of 16,074,278 Swiss Francs, which was valued at approximately $10 million at the time of the judgment.

On October 15, 2008, the Court of Cassation of the Superior Court of the Canton of Berne ("Court of Cassation") affirmed the convictions of both Imre and Endre. In its ruling, the Court of Cassation found that "Imre Papp converted into cash a total of 20

5

forged public medium term bonds of Seeland Bank and alone, as well as through four companies established by him by submitting these forged securities at various banks and causing them to be sold or pledged." Supp. App. 53. As a result of those activities, "several hundred thousand USD of the proceeds from the forged public medium term bonds and coupons flowed to his private account." Id. at 54. The Court of Cassation restated with approval and agreement the accusation of Swiss prosecutors that:

> Imre Papp imported from August 1994 to August 24, 1999 portions of the proceeds mentioned as cash to the United States, caused them to be transferred to accounts in the United States via Hungary and Lichtenstein, or had portions of them brought to him … which as per October 1998 amounted to the equivalent of at least USD 1.25 million.

Supp. App. 61. The Court of Cassation further found that:

> Imre Papp ... imported cash in the amount of approximately USD 300,000 to the United States from Switzerland, which he had obtained from the forged securities and coupons brought into circulation. In addition, he transferred to himself approximately USD 140,000 to the United States from Hungary.

Id.

Based on those findings, the Court of Cassation upheld Imre's "professional money laundering" conviction. With respect specifically to the property at 8 Bayview Terrace in New Jersey, the Court of Cassation affirmed the trial court's decision declining to rule that the house was built using the proceeds of illegal activity. That decision was grounded on the fact that "various documents requested in the United States through letters rogatory arrived at the court only after conclusion of the hearing of evidence,"

6

Supp. App. 63-64, and Imre thus had no opportunity to challenge it.

After the Court of Cassation issued its decision, the government moved for summary judgment in the civil forfeiture case in United States District Court. The government contended that, based on Imre's Swiss convictions, there was probable cause to believe that the three accounts and residential property represented the proceeds of money laundering and was therefore subject to forfeiture under 18 U.S.C. § 981. Imre and Maria, then represented by counsel, opposed the summary judgment motion and supported it with affidavits and other evidence. They contended that they funded the purchase of 8 Bayview Terrace and the subsequent construction of their residence, and their accounts, using legitimate income, including (1) a loan of $409,000 in September, 1996 from Jozsef Selmeczi, (2) a loan of $150,000 in 1998 from Peter Tartsanyi, (3) a $400,000 mortgage on the property obtained in March, 1999; (4) income derived from the sale of their previous residence at 65 Central Avenue in Franklin Park, New Jersey; (5) income derived from Imre's import/export business; and (6) Maria's salary. In the alternative, the Papps contended that Maria was an innocent owner under 18 U.S.C. § 983(d). See also 18 U.S.C. § 981(a)(2).

In an order entered on October 6, 2009, the District Court awarded summary judgment to the United States. In determining whether there was a genuine issue for trial, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), the District Court applied the burden shifting framework under 18 U.S.C. § 981. This case was filed before the

7

amendments to the civil forfeiture statutes, known as CAFRA, took effect, and so was not governed by CAFRA's alteration of the prior law's assignment of burdens of proof. U.S. v. One "Piper" Aztec, 321 F.3d 355, 357-59 (3d Cir. 2003) (CAFRA, which requires the government to prove forfeiture under preponderance of evidence standard, does not apply retroactively).[2] The government thus bore the initial burden of demonstrating that there was probable cause to believe the defendant property was subject to forfeiture. See United States v. $734,578.82 in U.S. Currency, 286 F.3d 641, 649 (3d Cir. 2002). Once the government showed probable cause, the burden shifted to the Papps to prove by a preponderance of the evidence that the property was not subject to forfeiture. One "Piper" Aztec, 321 F.3d at 359.

Probable cause is a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." United States v. On Leong Chinese Merchants' Ass'n Bldg., 918 F.2d 1289, 1292 (7th Cir. 1990). The government satisfies its initial burden if it produces evidence "adequate and sufficiently reliable to warrant the belief by a reasonable person that the property" constitutes the proceeds of illegal activity. United States v. RR No. 1 Box 224, 14 F.3d 864, 869 (3d Cir. 1994) (internal quotation omitted). Once the government establishes probable cause, if the claimant fails to meet his or her burden to prove by a preponderance of the evidence that

---

[2] All citations to 18 U.S.C. § 981 in the Opinion refer to the version of the statute in effect on March 28, 2000.

8

the property was not subject to forfeiture, summary judgment is appropriate. On Leong, 918 F.2d at 1292.

The District Court concluded that the government demonstrated probable cause. Even though the Swiss courts declined to rule that the house at 8 Bayview Terrace was built using the proceeds of illegal activity, the government could still successfully argue probable cause because the ruling did not include a finding that the house was *not* built using the proceeds of illegal activity. Moreover, the Court of Cassation's written decision affirming Imre's "professional money laundering" and other convictions, together with the tracing of the money into the defendant accounts and realty, amply demonstrated probable cause to believe that Imre personally imported $305,300 in stolen currency to the United States during the relevant time period. Further, in moving for summary judgment, the government produced wire transfer records showing the transferring of $1.1 million to Imre's accounts in the United States during the relevant time period. Included in that sum was a May 27, 1998 transfer of $150,000, which was made shortly after the intercepted telephone call in which Imre told Endre he needed more money to finish the house. In addition, the government produced bank records from the three defendant accounts indicating that approximately $833,968 was transferred from foreign sources to the Papps' Summit Bank account and $408,970 was transferred to Imre's Independence Community Bank account during the relevant time period. The government established that the Charles Schwab account was funded using checks from

the Summit Bank account. Last, but not least, the record of the Papps' spending on the property and the house contemporaneous with the money laundering was not disputed.

The burden to prove by a preponderance of the evidence that the property was not subject to forfeiture thus shifted to the Papps. One "Piper" Aztec, 321 F.3d at 359. The District Court found the Papps' evidence of sources of legitimate income to be insufficient to carry their burden to show that the defendant property was not obtained using the proceeds of illegal activity. See Anderson, 477 U.S. at 252 ("[A] scintilla of evidence in support of the [claimant's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [claimant]."). The Papps submitted an affidavit from Jozsef Selmeczi, dated November 8, 2008, in which he stated that Imre was known to him in Hungary as a successful businessman. On September 25, 1996, he wired $409,000 from his own account to Imre's Unitrade Unlimited account in order to invest in the development and sale of the 8 Bayview Terrace property. He was never repaid on the loan. The Papps also submitted a one-page German-language document that appeared to be a receipt for the $409,000 wire transfer.

The District Court concluded that the Selmeczi affidavit and wire transfer receipt were not sufficient to raise an issue of material fact necessitating a trial. The Papps did not provide a written loan agreement or any other document relating to negotiations between Selmeczi and Imre at the time the loan supposedly was made, which the District

10

Court found odd, and the affidavit itself was executed 11 years after the loan supposedly was made. In addition, the Papps did not produce any correspondence between themselves and Selmeczi during the 11-year period. Further, Selmeczi stated in his affidavit that the $409,000 payment was intended to be an investment to allow Imre to build a house and sell it, and yet there was no evidence the Papps ever intended to sell the house at 8 Bayview Terrace. Once completed, they moved in. As to the wire transfer receipt, it was neutral on the question whether the transfer was legitimate or yet another illegitimate transfer.

The District Court concluded that there was no documentation that the Tartsanyi loan existed either. The Papps submitted a copy of a check written by Imre and payable to Tartsanyi, but the check by itself was not evidence of repayment of a loan.[3] Moreover, the $178,012 check was drawn on the Papps' Summit Bank account and dated March 10, 1999, and that account was the recipient of laundered money totaling $833,968 prior to that date. As to the March 3, 1999 mortgage on 8 Bayview Terrace, which generated a $321,141.97 deposit into the Summit Bank account, the District Court reasoned that,

---

[3] The Papps have filed a motion on appeal to supplement the record. Among the new items submitted with the Informal Brief is an affidavit dated November 17, 2009 from Peter Tartsanyi, in which he avers that he loaned $150,000 to Imre for the construction in Green Brook, New Jersey. The government has asked us to the deny the motion to supplement the record, and we will do so, but we note that, even if we were to consider the Tartsanyi affidavit, it would be insufficient to warrant a trial. An affidavit issued 11 years after a loan supposedly was made is insufficient under the circumstances of this case. As with the Selmeczi loan, the Papps did not provide a written loan agreement or any other document relating to negotiations at the time the loan supposedly was made.

because there was probable cause to believe that the residence was constructed using the proceeds of Imre's money laundering, any money received pursuant to a mortgage on that property would also be subject to forfeiture. As to the sale of the Papps' prior residence in Franklin Park, New Jersey, and the $165,000 derived from it and deposited into the Charles Schwab account, that was legitimate income; but it could not be credited for summary judgment purposes because the Papps did not provide documentation of the sale or bank records showing the deposit, leaving the District Court with nothing but the Papps' unsupported assertions. See Fed. R. Civ. Pro. 59(e)(2) (in opposing summary judgment opposing party must by affidavit or other evidence show specific facts showing genuine issue for trial). The bills of lading submitted to demonstrate that Imre ran an import/export business were insufficient proof to show that he generated sufficient legitimate income to fund the purchase and construction of the defendant property and to fund the defendant accounts, especially in view of the findings of the Swiss courts underlying Imre's conviction for "professional money laundering."

Last, Maria contended that she deposited the full amount of her $50,000 annual salary each year into the Summit Bank account. When her employment was terminated, she deposited her $18,000 severance payment into the Summit Bank account, and she deposited $57,000 from a 401(k) retirement fund into the Charles Schwab account. Maria also claimed to have deposited the entire amount of her $400 per week unemployment check into the Summit bank account. Insofar as the accounts were not frozen until March

12

27, 2000, Maria specifically claimed that $13,894 of her legitimately obtained funds was deposited in the Summit Bank account between Imre's arrest and the time the account was frozen, a period of about seven months when Imre could not have been laundering money. The District Court concluded that Maria's assertions were insufficiently supported. For example, no reasonable juror could conclude that Maria deposited her entire salary every year, and did not use any portion of it for living expenses such as food, clothing and transportation. Initially, the court reserved judgment on the $13,894 deposited after Imre's arrest, but, after the government conducted an investigation, the District Court concluded that Maria should be reimbursed in the amount of $11,339.45 upon liquidation of the forfeited Summit Bank account.[4]

As to the Papps' assertion that Maria's interest in 8 Bayview Terrace should not be forfeited because she is an "innocent owner" within the meaning of 18 U.S.C. § 983(d), the District Court explained that the statute defined "innocent owner" to mean an individual who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). See also United States v. Property Known as 6109 Grubb Road, 886 F.2d 618, 621 (3d Cir. 1989) (innocent owner can avoid forfeiture by proving by preponderance of evidence that illegal act was committed without her knowledge or consent). The District Court

---

[4] The government has not appealed this order.

13

concluded that no triable issue existed as to Maria's knowledge of Imre's criminal activity, or whether she had given timely notice to law enforcement, because she submitted no evidence that she fell into either of those categories. The Papps appeal pro se.

We will affirm. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. Pro. 56(c) (effective through November 30, 2009).[5] Under Rule 56(c), the moving party must show that there is an absence of evidence to support the nonmoving party's case. See id. Once the moving party has met this burden, the nonmoving party may not rest upon his allegations and arguments; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A plaintiff cannot avoid summary judgment with speculation; he or she must provide competent evidence from which a rational trier of fact can find in his or her

---

[5] Rule 56(c) was amended effective December 1, 2009, and continues to provide that: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2).

favor.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

On appeal, the Papps contend that: (1) the District Court in awarding summary judgment to the United States improperly relied on the government's unsupported assertions in the Verified Complaint; and (2) the government failed to prove Maria's knowledge of Imre's illegal activities.  We have reviewed the record and find these arguments lacking in merit.  In moving for summary judgment, the government was required to support its assertions with evidence, and it did so.  Although the Verified Complaint refers to *fraudulent* medium term fixed-rate notes worth 800,000,000 Swiss Francs, and that number appears to refer instead to the total volume of medium term fixed rate notes involved when Seeland Bank was taken over by Swiss Bank, the District Court in awarding summary judgment credited only assertions the government supported with actual evidence.  The government did not attempt to prove that Imre committed a fraud in the amount of 800,000,000 Swiss Francs, and the District Court observed that Imre's fraud involved about 20,000,000 Swiss Francs, see District Court Opinion, at 2.

The Papps contend that the District Court was confused about how much money was transferred by Endre, contending: "Unfortunately, the court and/or the Government *failed to hire [ ] certified professionals for accounting* purposes who would be able to create a clear chart of the monies ... transferred.  Example: Monies received from Endre: total of $537,462; NOT .. '1.1 mill.....'  By Imre: total of: $317,000; NOT from Endre as

falsely stated!!!" See Appellant's Informal Brief, at 3. This argument is unavailing as well because summary judgment can only be avoided by showing a genuine dispute about a *material* fact. Anderson, 477 U.S. at 248. A factual dispute over a nonmaterial fact will not defeat a properly supported motion for summary judgment. See id. The government provided ample evidence to show probable cause to believe that the defendant property represented the proceeds of money laundering by Imre and was therefore subject to forfeiture under 18 U.S.C. § 981. Further, we fully agree with the District Court's determination that the Papps' evidence of legitimate income was insufficient to warrant a trial. See Anderson, 477 U.S. at 252. The Papps failed to carry their burden to show by a preponderance of the evidence that the defendant property was not obtained using the proceeds of illegal activity, see One "Piper" Aztec, 321 F.3d at 359, and thus summary judgment ordering forfeiture of that property was appropriate.

As to Maria's innocent owner defense, the Papps established through documentation that the property located at 8 Bayview Terrace was held by Imre and Maria as tenants by the entirety. In addition, two of the defendant accounts were joint accounts. Moreover, the government did not allege that Maria participated in Imre's illegal activities, and even if the government amply establishes probable cause, Maria need only demonstrate that she lacked knowledge of the illegal transactions to interpose the innocent owner defense. The Papps contend on appeal that the government failed to prove that Maria had any knowledge of Imre's illegal activities. This argument lacks

16

merit. The Papps have the burden of proving that Maria is an innocent owner. See

United States v. One 1973 Rolls Royce, 43 F.3d 794, 805 (3d Cir. 1994). She must, and

did, show that she is an owner, but she must also show that she did not know about or

consent to the improper use of the property. See id. Since she submitted no evidence that

she had no knowledge of the source of the funds, and, as the District Court pointed out,

the amount of money involved is unlikely to have gone unnoticed by her, the District

Court's rejection of the innocent owner defense was proper. Fed. R. Civ. Pro. 56(e)(2)

(claimant must set out specific facts showing genuine issue for trial).

We will affirm the order of the District Court granting summary judgment to the

United States. Appellants' motion to supplement the record is denied.