**UNITED STATES of America, Plaintiff,**

v.

**PROPERTY IDENTIFIED AS 908 T STREET, N.W., WASHINGTON, D.C., Real Property Containing a Three Story Brick Building with Basement, Further Described as Square 362, Lot 232, Defendant.**

Civ. A. No. 88–2448 (JHG).

United States District Court,
District of Columbia.

July 19, 1991.

Jock Banks, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Larry Klayman, Frederick J. Sujat, Jennifer A. Widmer, Klayman & Associates, Washington, D.C., for claimant William Akers.

Mark H. Friedman, Friedman & MacFadyen, Baltimore, Md., for intervenor National City Mortg. Co.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

The government initiated this civil forfeiture action under the Controlled Substance Act, 21 U.S.C. § 881, alleging that defendant property was used to distribute or facilitate the distribution of heroin and cocaine. Having considered the evidence adduced at a bench trial and the entire record herein and having had an opportunity to examine the credibility of the witnesses and to consider their demeanor and behavior as witnesses on the stand and their manner of testifying, the Court concludes, for the reasons articulated below, that claimant William Akers, the owner of defendant property, has established, by a preponderance of the evidence, that he may not have known and that he did not consent to the use of his home "to commit, or to facilitate the commission of" narcotics violations. *See* 21 U.S.C. § 881(a)(7).

## I. PROCEDURAL HISTORY

On August 30, 1988, the government filed a complaint for forfeiture in rem, accompanied by an affidavit of Guy L. Poirier, Investigator, Financial Investigation Unit, Metropolitan Police Department ("MPD"); two affidavits of William Nealis, a detective with the MPD; and an affidavit of Joseph Romano, an officer with the MPD. The government subsequently moved for summary judgment. On June 20, 1990, claimant opposed said motion and submitted affidavits of both the claimant

and his daughter, Gail W. Akers ("Gail").[1] On March 12, 1991, plaintiff's motion for summary judgment was denied; the Court found that there was a genuine dispute as to whether claimant consented to the use of defendant property for the facilitation of drug offenses. 758 F.Supp. 761. Consequently, on July 11, 1991, there was a trial of this case.

## II. FACTUAL FINDINGS

On April 26, 1984, Detective Nealis prepared an affidavit in support of a search warrant for the premises of 908 T Street, N.W. in the District of Columbia. According to the affidavit, which he adopted at trial, Detective Nealis was advised by a undisclosed source[2] that illicit drugs were being sold from those premises. After meeting with the detective, the source proceeded to 908 T Street, N.W. where he met an unknown "subject," a black male from whom he purchased a drug called phenmetrazine. The detective further testified that, consistent with the Report of Investigation, which was admitted into evidence, the unknown "subject" was a man named "Billy," a black male, between 40 and 45 years old.

According to Detective Nealis' testimony, members of the 1984 search team recovered from a locker on the third floor of claimant's house $300,000 to $350,000, narcotics; claimant's driver's license or, according to the testimony of claimant, a bill, and a fingerprint of claimant. The Report of Investigation further describes that numerous rounds of shotgun shells, two shotguns, three handguns, narcotic paraphernalia, pistol ammunition, $1072 in cash, three one-ounce packets with a white powder determined to be heroin, fifty rolled quarters of heroin, one and one-half pounds of cannabis, and various pills were found in the claimant's home. Claimant was indicted

---

1. On July 31, 1990, National City Mortgage Company ("National City") moved to intervene, which motion was granted on October 26, 1990. National City also opposed plaintiff's motion for summary judgment.

2. Detective Nealis explained on cross examination that the source had provided the MPD with

reliable information on prior occasions, but that at the time he assisted the police in 1984, the source had a pending narcotics case and he was being paid for his help. Detective Nealis further explained that concealing the identity of a source, as he continued to do, is a standard procedure.

and acquitted of all charges prosecuted as a result of this search.

Detective Nealis prepared another affidavit on August 11, 1988, also in support of a search warrant for the premises of 908 T Street, N.W. According to the affidavit and the testimony of Detective Nealis, a source had informed him that heroin was being stored in and sold from the premises of 908 T Street, N.W.[3] The source explained that he or she went to the premises of 908 T Street, knocked on the door, was let into the house, and purchased a white powder from a black male "subject." Again, at trial, Detective Nealis testified that the "suspect" mentioned in the affidavit was believed to be a man named "Billy Akers." The detective further explained that the source was not described in the affidavit because, at that time, there were very few people entering and exiting the house, and the MPD was, therefore, concerned with shielding the identity and protecting the safety of the source.

At the time the officers executed the 1988 warrant, only Mr. Akers and a child were in the house. Mr. Akers was in the kitchen at the back of the house. As the officers entered the house from the rear door, Mr. Akers proceeded down the hallway, toward the front of the house, when he made a throwing motion toward an alcove. In the alcove, near the door to the basement, the officers found 145 quarters of heroin. Detective Nealis further testified that Mr. Akers provided the officers with a key to the basement, where they also found, among other things, a pit bull and a cocaine-based substance next to a letter addressed to Mr. Akers. As in 1984, Mr. Akers was acquitted of all charges brought as a result of the 1988 search.

Investigator Poirier, who also testified on behalf of the government, prepared the affidavit in support of the instant complaint. Although he was present during the August 12, 1988 search, he was not present at the time of the 1984 or 1986 searches but relied on that information in

preparing his affidavit in support of the forfeiture.

Investigator Poirier corroborated Detective Nealis' description of the 1988 search. According to Poirier's affidavit, the search members recovered a 12–gauge shotgun, brand name Wards, serial # 76692; seven live rounds of 12–gauge shotgun shells; one clear plastic bag containing 145 rolled packets of white powder, a portion of which tested positive for heroin; one brown paper bag containing two packets of a beige rock-like substance, a portion of which field-tested positive for cocaine; one clear plastic bag containing approximately 13 grams of white powder, a portion of which field-tested positive for heroin; numerous pills; two marked bottles of a white powder, quinine; another ziplock bag of cocaine; and a police receipt made out to William Akers. The investigator further testified that at the time the search warrant was executed, Mr. Akers, who was standing within ten feet of a bag of heroin, was home with his eleven-year-old grandson.

Investigator Poirier also described a search of 908 T Street, N.W. which took place on February 20, 1986. According to his affidavit, as a result of this search, members of the Morals Division recovered one brown paper bag containing 20 bags of cocaine and 43 plastic bags of heroin. The Morals Division also seized one tinfoil package of heroin, one black plastic bag containing 19 Preludin, and one bag containing a small quantity of cannabis.

William Akers, also known as Billy, testified on his own behalf. He explained that he has nine children, all adults, the majority of whom have lived in his three-story house at one time or another. Six of his nine children have used drugs, but Gail, who is presently living at 908 T Street, N.W., Martha, and Toni have never used or distributed narcotics. In the past five years, his children, Toni, Martha, Gail, Kathy, Jeffrey, and Hayward, have lived at 908 T Street, N.W., but he testified that,

---

**3.** Again, Detective Nealis explained that although the source had a pending narcotics case and was being paid for the assistance he provided the police, he had been used by the MPD before and had proven reliable.

for the most part, all of his children were permitted to come and go as they pleased. They all, at one time, had keys to claimant's house. Mr. Akers testified that he spends most of his time in his room on the second floor, reading or watching television and that although he has access to every room in the house, he does not make it a practice to go into their rooms.

Although Mr. Akers testified that he had never seen his children use drugs in his home and that if he had, he would have asked that they leave, he is certainly aware that many of his children have, at various times, used drugs. He pointed, in particular, to Kathy, who has spent much of her life incarcerated, whose children Tammy and Fran are now living at 908 T Street, N.W., whose key to the house was taken away in 1986, and who was asked to move sometime before August 1988 because she was a "nuisance around the neighborhood"; Jeffrey, who was convicted as a result of the search in 1986 and who was asked to leave Mr. Akers' house sometime after 1986; Gregory; and Hayward.

Mr. Akers further explained that he had no knowledge of the drugs that were recovered in 1984 until after the search was conducted, and he disputed Detective Neal-is' testimony that he even had a driver's license in 1984. Similarly, Mr. Akers claimed that he only became aware that drugs were being stored in and sold from his home in 1986 after his son, Jeffrey, was arrested. Finally, Mr. Akers testified that he was unaware in 1988 that his home was being used for the facilitation of drug offenses; claimed that on August 12, 1988, Kathy and her friends had been in his home; suggested that Kathy may have brought the drugs into his home; but conceded that when the police executed the 1988 search warrant, he was standing approximately 15 feet from the alcove where heroin was found.

Tammy Evans, Mr. Akers' twenty-year-old granddaughter who has lived at 908 T Street, N.W. all of her life, also testified. She asserted that she has never used drugs and has never seen her grandfather use or distribute drugs. Ms. Evans also testified that she was present during the 1986 search but did not know the result of that search.

Finally, Gail, who has lived continuously at 908 T Street, N.W. since 1983 and who has helped to maintain the premises, testified on behalf of her father. Gail explained that she was working at the University of the District of Columbia and, in the evenings at a law office as an accountant, on April 24, 1984, the day the first search warrant was executed. When she returned home that evening and as a result of the search, Gail was arrested immediately and was incarcerated for four days. Gail explained that she was very angry that she had been wrongly arrested and that she, therefore, talked to her family to try to determine whose drugs were being stored in or distributed from the house. After inquiring of her siblings, she learned that the drugs belonged to her brother Gregory.

In February 1986, Gail testified that her father put Kathy and Jeffrey out of the house and that her father took certain measures so that they would not "sneak back in." For example, he nailed up windows, put locks on the doors, "things like that." She further explained that from 1986 through 1988, there was no reason to believe that her father's home was being used for the facilitation of narcotics activities: Her addicted siblings "had been put out" of the house "to fend for themselves"; no one living permanently at 908 T Street, N.W. during that time used drugs; and Gregory, when he was released from prison in 1987 or early 1988, was living at a halfway house where he was monitored, was permitted to visit with his family every weekend, consistently tested negative for drugs, and attended a narcotics rehabilitation program.

## III. LEGAL STANDARDS AND CONCLUSIONS

The governing forfeiture statute provides for the forfeiture of:

[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or

tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, *except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(7) (emphasis added).

 Civil forfeiture does not require a prior criminal conviction or even a prior criminal proceeding. *See United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street*, 901 F.2d 288, 292 (2d Cir.1990). Unlike other civil proceedings, property is subject to forfeiture only upon a showing of probable cause that defendant property was used to commit or facilitate the commission of a felony. *United States v. Brock*, 747 F.2d 761, 762 (D.C.Cir.1984) (per curiam). Probable cause in this context means that "the government must have reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture." *See United States v. Premises and Real Property at 4492 South Livonia Road, Livonia, New York*, 889 F.2d 1258, 1267 (2d Cir.1989) ("*Livonia*").

 Reliable hearsay evidence may be introduced at the probable cause stage. *See United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road in Chester, Vermont*, 916 F.2d 808, 814 (2d Cir.1990), *cert. denied sub nom. Moreno v. United States Drug Enforcement Administration*, — U.S. —, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). As the Court of Appeals for the Second Circuit has explained:

> Although [*United States v. One 56–Foot Motor Yacht Named Tahuna*, 702 F.2d 1276 (9th Cir.1983)] was decided prior to the 1984 amendment to § 881 that added real property as a forfeitable res, federal courts have continued to follow *Tahuna* in allowing the government to show probable cause on the basis of hearsay, even where real property is at stake.... Probable cause, as *Tahuna* points out, traditionally may be established by hearsay.... Since probable cause is all the government need show to establish its prima facie case at the forfeiture proceeding, it should be sufficient to use whatever evidence traditionally establishes probable cause.

*Livonia*, 889 F.2d at 1267.

 Once the government has made a showing of probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture. The claimant must prove either that the property was not used unlawfully or that the illegal use was without the claimant's knowledge or consent. *See id.; United States v. Parcel of Real Property Known as 6109 Grubb Road, Mill Creek Township, Erie County, Pennsylvania*, 886 F.2d 618, 623–26 (3d Cir.1989) ("*Grubb*"). The statute explicitly allows a claimant to avoid forfeiture by establishing either that he had no knowledge of narcotics activity, or, if he had such knowledge, that he did not consent to it. 21 U.S.C. § 881(a)(7); *United States v. 141st Street Corp.*, 911 F.2d 870, 878 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991) ("*141st Street*"); *Grubb*, 886 F.2d at 626. As the Court of Appeals for the Second Circuit has concluded, "Congress' use of the disjunctive 'or' suggests that a claimant should succeed by establishing either lack of knowledge or lack of consent." *141st Street*, 911 F.2d at 878; *Grubb*, 886 F.2d at 625–26 (citing cases).

 In meeting its burden, a claimant must show that he took "all reasonable steps to prevent illicit use of premises once [he] acquire[d] knowledge of that use." *141st Street*, 911 F.2d at 879. Properly admitted hearsay evidence on the issue of whether there was probable cause to find that the property was used to further trafficking of illegal narcotics is inadmissible in a forfeiture case on the issue of whether an owner falls within the innocent owner ex-

ception. As the Court of Appeals for the Third Circuit stated, "It is well settled law that evidence which is relevant and admissible as to one issue, here probable cause, can be inadmissible as to another issue, *i.e.* to rebut the innocent owner defense." *Grubb,* 886 F.2d at 622.

It is clear that the government had probable cause to believe that defendant property was used to commit or facilitate the commission of a felony in violation of Title 21 of the United States Code. *See* Order, dated March 12, 1991, at 3. Even were the Court to disregard the testimony and exhibits concerning the 1984 search, the government clearly met its initial burden of showing probable cause for the seizure.[4] The 1986 and 1988 searches and exhibits and testimony related thereto provide the Court with ample evidence to find that the government had probable cause to bring this action.

■ Because the government has established a prima facie case for forfeiture, the burden shifts to Mr. Akers to prove by a preponderance of the evidence either that he did not know that his home was being used to facilitate the distribution of narcotics or that, if he did know, that he did not consent to such use.

It is a close question whether the claimant had knowledge that his house was being used to facilitate the distribution of narcotics.[5] The government emphasized that three search warrants had been executed at 908 T Street, N.W. and that, at a minimum, Mr. Akers was aware that members of his family were using his home for drug-related activities on those occasions. Gail, however, provided credible testimony to support her father's contention that while he knew there were drugs in his home on those three occasions, he had no reason to assume that his home was being used to facilitate the distribution of drugs for either a continuous period from 1984 through 1988 or at times other than those immediately proximate to the three search periods. For example, Gail explained that while Gregory was responsible for the contraband found during the 1984 search, Jeffrey was responsible for the narcotics recovered in the 1986 search. She further explained that when Gregory was released from prison in 1987 or early 1988, he was living in a halfway house, was regularly granted weekend passes, and repeatedly tested negative for drugs. In fact, Gail, on behalf of her family, accompanied Gregory to drug rehabilitation consultants and facilities to stimulate his apparent progress. Consequently, although Gregory had a history of narcotics use and distribution, there was scant reason to question his involvement with narcotics during that rehabilitation period. She also explained that two of her drug-addicted siblings, Kathy and Jeffrey, had been "put out" of the house by her father because of their drug-related activities. There was no evidence produced that members of Mr. Akers' family who presently live at 908 T Street, N.W. and who have lived there since Kathy and Jeffrey were ordered to leave, are or have been involved in illegal activities.

In any event, Gail also provided the Court with convincing, uncontradicted testimony that her father took "all reasonable steps to prevent illicit use of premises." *141st Street,* 911 F.2d at 879. She testified that he nailed windows shut, put locks on the doors, kicked his drug-addicted children out of the house, and, as she did, encouraged his drug-addicted children to attend drug treatment programs.

The claimant's corroborated showing of lack of consent was neither contradicted

---

**4.** Although claimant inquired at trial into the circumstances surrounding the 1984 search, claimant urges the Court to disregard that evidence. The Court had previously concluded that it is unnecessary to consider the 1984 warrant in determining whether there was probable cause to bring this action because "[t]he forfeiture statute did not become effective until October 12, 1984." Order, dated March 12, 1991, at 3 n. 3.

**5.** In its Order of March 12, 1991, and based on the record then before the Court, the Court found that claimant knew his family was using defendant property for drug-related activities. Order, at 4–5. Because both the government and the claimant provided evidence in this regard and also argued the issue of knowledge and with a more developed record now before it, the Court has reconsidered its prior conclusion on the issue of claimant's knowledge.

nor rebutted and thus, stands unchallenged.[6] Moreover, the government failed to successfully attack the credibility of claimant's witnesses. While it is difficult to say whether or not Mr. Akers' testimony, standing alone, would have been sufficient to prove, by a preponderance of the evidence, that he is an innocent owner, Mr. Akers' testimony was buttressed by the testimony of Gail, who on both direct and cross examination, was exceedingly impressive and credible: She was poised, articulate, intelligent, and consistent; she corroborated aspects of her father's testimony, including his testimony that he ordered his daughter, Kathy, to leave the house; and she provided the Court with uncontradicted details of the steps her father took to secure a drug-free environment. Moreover, although the Court has no reason, in this case, to question the credibility of the policemen, of course, their testimony was constricted to the period immediately surrounding the search warrants and did not go to whether the claimant "consented" to the use of his home in violation of 21 U.S.C. § 881(a)(7).

Claimant has readily shown, by a preponderance of the evidence, that he may not have known and that he certainly did not consent to his property being "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a [narcotics] violation," 21 U.S.C. § 881(a)(7), and therefore, claimant has clearly proved that he is entitled to judgment in his favor based on the "innocent owner" defense.

## IV. CONCLUSION

Accordingly, for the reasons expressed above, it is hereby

ORDERED that judgment is entered in favor of claimant, William Akers, and

against plaintiff, the United States of America.

IT IS SO ORDERED.

---

6. At trial, the government urged the Court to consider the events surrounding the 1984 search in determining whether claimant consented to the use of his home for narcotics trafficking. Although the Court allowed testimony concerning the 1984 search in order to develop a full record, the Court reserved its ruling on the admissibility of this evidence. The Court still

finds, as it had in its March 12, 1991 Order, that it is unnecessary to consider the 1984 warrant because the forfeiture statute did not become effective until October 12, 1984, after the search. In any event, even had the Court considered the non-hearsay evidence pertaining to the 1984 search, it still would have found that claimant's showing of lack of consent is uncontradicted.