**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ONE PARCEL OF REAL ESTATE AT 1012 GERMANTOWN ROAD, PALM BEACH COUNTY, FLORIDA also known as "D's" Grocery, Defendant–Appellant,**

**Roberto Chang, Claimant–Appellant.**

**No. 89–5590.**

United States Court of Appeals, Eleventh Circuit.

June 26, 1992.

James L. Eisenberg, West Palm Beach, Fla., Joel Kaplan, Miami, Fla., for defendant-appellant.

Dexter Lehtinen, U.S. Atty., Lynn M. Summers, Linda Collins Hertz, Anne M. Hayes, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, HILL * and SMITH **, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

In a special verdict rendered in the United States District Court for the Southern District of Florida, a jury determined that the property of claimant Roberto Chang was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7). Chang appeals this verdict challenging a) the district court's decision to allow the jury to overhear hearsay evidence and b) a special interrogatory equating consent with a property owner's failure to take all reasonable efforts to prevent illicit use of his property. Because the district court committed reversible error when it allowed the jury to overhear inadmissible hearsay evidence, we remand

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

for a new trial at which the judge should thoroughly instruct the jury on the legal definition of consent.

## I. THE FACTS

The defendant real estate is a parcel of land situated at the intersection of 10th Street and Germantown Road, Delray Beach, Palm Beach County, Florida (1012 Germantown Road). Located on this real estate is a convenience store where such items as fresh coffee, soda, beer, bread and canned foods are sold. The store is referred to as "D's Grocery," and is owned, along with the accompanying real estate, by Roberto Chang ("claimant"), the proprietor of the store. Claimant purchased the property in 1979 or 1980 following a period during which he leased the store from the prior owner.

In January, 1987, a task force was formed to address the drug trafficking problems plaguing the greater Germantown Road area. The force consisted of agents from the Federal Bureau of Investigation and other federal agencies, as well as officers from the local police and sheriff's offices. The local law enforcement agencies had proposed the creation of such a task force after realizing that their increased commitment of resources had led to even less success in controlling the drug traffic.

The initial focus of the task force was the source of supply of narcotics in the targeted areas, including the 10th Street/Germantown Road neighborhood. Because street arrests had proven ineffective, the strategy of the task force was to incapacitate the source of the drug supply. The local agencies, prior to the formation of the task force, had developed an intelligence base that indicated that an individual named Deniz Fernandez and an associate were the source of the narcotics in the area.

The FBI agent assigned to head the task force used this information to identify specific locations in the 10th Street/Germantown Road area associated with the sale of cocaine and other drugs. Two of these properties were identified as "The Hole" and D's Grocery. The Hole was owned by Deniz Fernandez, Abraham Oliva, and Roberto Rodriguez, and D's Grocery was owned by claimant.

As a result of the task force investigation, Deniz Fernandez, Abraham Oliva, Roberto Rodriguez, and others were indicted. Civil forfeiture actions commenced on numerous properties in the 10th Street/Germantown area, including D's Grocery. The indictment was received into evidence.

The government presented numerous witnesses who testified to buying and selling drugs at the 1012 Germantown location. Many of these witnesses discussed the relationship between The Hole and the parking lot of D's Grocery. According to these witnesses, the sale would commence on the grounds of the grocery, but the supplies were stored at The Hole. Often the dealers would run from the parking lot to The Hole to obtain more drugs for sale. The government offered no witnesses who admitted selling or buying drugs inside of D's Grocery or who ever saw drugs within the Grocery.

Claimant Chang was aware of the drug activity occurring on and around his property. He testified, however, that he never saw drugs or drug transactions occurring within his store. Chang also introduced corroborating testimony from fourteen witnesses who were either residents of the area or otherwise familiar with the Germantown location.

Chang and several of his witnesses testified that he tried constantly to halt the drug traffic. On numerous occasions he or one of his employees would call the police. Often, he would personally leave the store to chase away the dealers. He placed large yellow signs in both front windows of the store which said "No Loitering." He installed cameras and mirrors inside his store to detect illegal activity. He removed the telephones on the north side of his building because he suspected they were being used to facilitate drug sales. He paved over the dirt parking lot to prevent drug dealers from burying their drugs in the dirt. He erected tall fences, installed a burglar alarm and kept watchdogs. He

asked several of his friends and some drug dealers to assist him in moving the drug traffic off his property.

The government claims that Chang made insufficient efforts to prevent drug dealings on his property. They question the number of calls he made to police, arguing that claimant should have obtained phone logs to prove his calls. In addition, they claim that Chang only chased away the drug dealers when the police were able to observe him doing so. Finally, the government suggested, during closing arguments, that Chang should have released his dogs to drive away the loiterers.

Through the task force investigation, the police compiled information linking Roberto Chang with the convicted drug supplier, Deniz Fernandez. A search of Fernandez' home uncovered an album containing a photograph of Deniz Fernandez, Abraham Oliva and claimant Roberto Chang in an obviously social setting. In addition, Fernandez' business (a plant nursery) had originally been located in a shed on claimant's property that Fernandez had leased from Chang. In the past, Chang had lent money to Fernandez to start his nursery business, and Fernandez had paid him back completely. Chang acknowledged that Fernandez was his friend due to their connections in Cuba but denied that he knew of Fernandez' involvement in drug dealing.

## II. COURSE OF PROCEEDINGS

On June 1, 1988, the government filed a claim against D's Grocery, alleging that the property was subject to forfeiture under 21 U.S.C. § 881(a)(7) as real property used to commit, or facilitate, the commission of a violation of Title 21. Claimant requested a jury trial.

Following argument of counsel on the order of proof and the admissibility of hearsay evidence during the government's initial probable cause case, the district court issued a ruling concerning the appropriate procedure to be utilized during the trial. The district court ruled that: (1) the issue of probable cause was a question for the court; (2) the government's probable cause evidence would be heard in the "presence of the jury because, otherwise, the case [would not] make any sense at all to let the defendant go forward with proof, and disprove something not at issue"; (3) the government would present its probable cause evidence first, then the court would make a legal determination of probable cause; and (4) if probable cause was established, then claimant would have the burden of proving his defense, and the government would be permitted to offer rebuttal evidence.

Trial commenced pursuant to this procedure. The government presented its evidence before the jury, and the district court ruled that the government had met its probable cause burden. Chang then presented his case, and the government had the opportunity to rebut. After completion of the closing arguments, the judge instructed the jury concerning the issues on which a verdict was necessary. The judge specifically modified Requested Jury Instruction No. 18 to eliminate the language requiring claimant to do "all he could do to prevent the illegal use of the defendant real estate" in order to prevent a section 881(a)(7) forfeiture. The jury was instructed to make its determination in the form of a special verdict, consisting of four interrogatories. The claimant made no objection to the jury instructions but objected to the last special interrogatory.

The jury returned a verdict in favor of the United States. The special interrogatory verdict form stated the jury's findings that claimant had not proven: (1) that the property had not been used to commit drug violations; (2) that claimant did not know of the illegal use of the property; (3) that claimant did not consent to the illegal use of the property; and (4) that claimant did not do everything that he could reasonably be expected to do to prevent the illegal use of the property. The district court subsequently entered a final judgment of forfeiture in accordance with the jury verdict. Claimant now appeals.

## III. THE CLAIMS

Claimant raises four issues on appeal. First he argues that the district court erred

when it chose to hear the government's probable cause hearsay evidence in the presence of the jury. Second, he claims that the district court erred by submitting the fourth special interrogatory to the jury in which the jury was asked whether claimant had proven that he had taken all reasonable actions to prevent his property from being used in violation of the drug laws. The other two issues raised by claimant are without merit, and in any case, need not be addressed given our decision to remand for a new trial on the basis of Chang's first claim.

## IV. STANDARD OF REVIEW

The propriety of procedures involved in a 21 U.S.C. § 881 case where an innocent owner defense is presented is a question of law and is consequently reviewed de novo. *United States v. One Single Family Residence*, 894 F.2d 1511 (11th Cir.1990). The content of a special interrogatory is reviewed for abuse of discretion. *Stewart & Stevenson Services, Inc. v. Pickard*, 749 F.2d 635, 641 (11th Cir.1984).

## V. THE STATUTE

21 U.S.C. § 881 provides for forfeiture of property used to facilitate illicit acts. Section 881(a)(7) deals specifically with the forfeiture of real property. Such property shall be subject to forfeiture if it:

is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

This circuit has noted that "[t]he language of section 881(a)(7) reflects two interrelated aims of Congress: to punish criminals while ensuring that innocent persons are not penalized for their unwitting association with wrongdoers." *United States v. 15621 S.W. 209th Avenue*, 894 F.2d 1511, 1513 (11th Cir.1990) (finding no forfeiture of property owned in the entireties by an innocent spouse). The latter purpose, the protection of innocent owners, is guaranteed by the statutory language exempting owners who have no knowledge of or do not consent to the illegal activity affecting their property.

This protection of innocent owners goes beyond the language of section 881. In evaluating forfeiture actions, courts must not only consider the statutory limitations, but the constitutional guarantees of core individual rights. See *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1548–49 (11th Cir.1987). This court has explicitly cautioned against the overzealous prosecution of drug related crimes at the expense of constitutional rights:

We are not unsympathetic to the government's strong desire to eradicate drug trafficking: we recognize that illegal drugs pose a tremendous threat to the integrity of our system of government. We must not forget, however, that at the core of this system lies the Constitution, with its guarantees of individuals' rights. We cannot permit these rights to become fatalities of the government's war on drugs.

*Id.* at 1548–49. See also *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689–690, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974). Accordingly, courts must cautiously balance the government's strong desire to eradicate illicit drug trafficking against constitutional guarantees of individual rights.

## VI. PROCEDURE

The structure of a section 881 forfeiture proceeding is well settled by statute and case law. First, a claimant must establish standing as an owner of the contested property. *United States v. Certain Real Property*, 724 F.Supp. 908, 913 (S.D.Fla. 1989). In this case, claimant's ownership is uncontested.

■ Once a claimant has established standing, the burden shifts to the government to prove probable cause for the institution of the forfeiture action. 19 U.S.C. § 1615; *United States v. One 1979*

*Porsche Coupe,* 709 F.2d 1424, 1426 (11th Cir.1983). The trial court bears the responsibility for determining whether the government has proven probable cause. 19 U.S.C. § 1615. The government must convince the judge that it had a "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." *United States v. A Single Family Residence,* 803 F.2d 625, 628 (11th Cir.1986). In presenting its case, the government is permitted to present otherwise inadmissible hearsay evidence. *Id.* at 629 n. 2.

Once probable cause is established, the burden shifts to the claimant to prove by a preponderance of the evidence a defense to the forfeiture. *United States v. 15603 8th Avenue North, Lake Park,* 933 F.2d 976, 979 (11th Cir.1991). It is a "statutory requirement" that the claimant, and not the government, bear the burden of proving an innocent owner defense. 19 U.S.C. § 1615; *United States v. Four Million Two Hundred Fifty-five Thousand Dollars,* 762 F.2d 895, 906–07 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). The question of whether a claimant has sufficiently established an innocent owner defense is a question of fact to be determined by the fact finder. *United States v. 5000 Palmetto Drive,* 928 F.2d 373 (11th Cir.1991); *United States v. Hayes,* 943 F.2d 1292 (11th Cir.1991).

## VII. BIFURCATION

■ Because the government is permitted to use hearsay evidence to prove its probable cause case to the court, *A Single Family Residence,* 803 F.2d at 629, n. 2, an issue arises concerning the propriety of allowing the jury to overhear this evidence. Usually, this situation is easily resolved because forfeiture cases are typically tried as bench trials, making it relatively easy for the judge as factfinder to sort out the hearsay evidence from the admissible evidence before making a factual determination.

In the instant case, a potential for prejudice arose because Chang exercised his right to a jury trial. In an attempt to avoid such prejudice, claimant Chang asked the district court to bifurcate the trial into a) a bench trial to determine probable cause and b) a subsequent jury trial on the issue of the innocent owner defense. The trial judge refused the request, reasoning that it would not "make any sense at all to let the defendant go forward with proof, and disprove something not at issue." By allowing the government to present hearsay evidence before the jury, the court committed reversible error.

### A. Case Law

Two other district courts and one other circuit court have dealt with similar requests to bifurcate a section 881 forfeiture trial in order to shield the jury from prejudicial hearsay. In each of these cases, the courts found that a trial must be bifurcated in order to avoid reversible error.

In *United States v. $150,000 In Currency,* 686 F.Supp. 133 (E.D.Va.1988), the "claimants ask[ed] the court to conduct the probable cause hearing outside the presence of the jury to avoid infecting the jury with inadmissible hearsay relating to probable cause." *Id.* at 134. The government in *$150,000 In Currency* contested claimant's bifurcation request. Finding no case law and no principle in favor of allowing hearsay into the jury's consideration of the government's forfeiture claim, the court honored the claimant's request: "there is no reason to distinguish a civil forfeiture proceeding from any other civil proceeding. Absent an exception under Rules 803 or 804, Fed.R.Evid., hearsay is not admissible for the truth of the matters asserted. Fed. R.Evid. 801(c), 802." *Id.* at 134. Similarly, a different district court held that "[p]roperly admitted hearsay evidence on the issue of whether there was probable cause to find that the property was used to further trafficking of illegal narcotics is inadmissible in a forfeiture case on the issue of whether an owner falls within the innocent owner exception." *United States v. Property Identified as 908 T Street, N.W.,* 770 F.Supp. 697, 702–03 (D.D.C.1991).

The Third Circuit has held that even in a bench trial, the improper use of hearsay

evidence during the innocent owner portion of the trial is grounds for remand. "It is well settled law that evidence which is relevant and admissible as to one issue, here probable cause, can be inadmissible as to another." *United States v. 6109 Grubb Road*, 886 F.2d 618, 622 (3rd Cir.1989). In *Grubb*, the district court relied on hearsay as well as other evidence to find that claimant had failed to sufficiently establish that he was an innocent owner. Because the use of hearsay depositions to rebut claimant's innocent owner defense was an "improper use of hearsay evidence" that had been admitted for the purpose of establishing probable cause, the Third Circuit was compelled to remand. *Id.* at 623.

### B. Curative Instruction Not Sufficient

The government contends that the judge's curative instruction was sufficient to erase any prejudice created by the admission of hearsay evidence. The judge had instructed the jury, on claimant's request that:

> Obviously, if he's telling you what he personally observed and saw, of course you can consider that. But when he's telling you about his sources, that's only offered for the *purpose of giving background*, and you're not to consider that as evidence against the defendant, because it's hearsay.

> That is, he can't say of his own personal knowledge what somebody told him. We're receiving that totally for the—*so you can put it in some context.*

(Emphasis added).

This instruction fails to erase the prejudice for several reasons. First, a curative instruction is not tantamount to deletion of prejudice. "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). In this case, it would be unreasonable to expect a jury to not only ignore the hearsay evidence, but to

remember which bits of information they acquired from hearsay evidence rather than from admissible evidence. The error from exposure to this much hearsay evidence cannot be fixed by curative instructions. *See $150,000 In Currency*, 686 F.Supp. at 134.

Second, the hearsay evidence was not an accidental slip on the part of counsel or a witness. All parties and the judge knew well in advance that the testimony would contain a great deal of hearsay. Failure to reverse on this issue, will lend credibility to the argument that judges need not avoid prejudicing the jury—even when avoidance does not impose hardship on any party or the court—because an instruction can undo the harm. The district court in *$150,000 In Currency* recognized this rationale when it noted that:

> a curative instruction [would not] be sufficient to dispel any prejudice to claimants flowing from the admission of hearsay. *To conclude otherwise would be to create a new rule that hearsay is admissible if accompanied by a curative instruction.* No such rule exists. Accordingly, the issue of probable cause for forfeiture will be heard by the Court prior to the jury trial on the issue of whether claimants are innocent owners of the seized property.

*$150,000 In Currency*, 686 F.Supp. at 134 (emphasis added).

Third, the judge's instruction was inadequate. He did not tell the jury that it could not use hearsay for the truth of the matter asserted. It merely told them to use the hearsay as background evidence. This instruction tells the jury to use the information, but to weigh it less heavily than other information. Such an instruction is insufficient to cure the prejudice incurred, especially when the prejudice could have been easily and appropriately avoided by bifurcation.

Finally, the judge never itemized the hearsay for the jury. In effect he told them, after hearing numerous witnesses and affidavits, to remember what each witness said and then to remember whether the witness said he saw something or

whether the witness was recounting what he had heard from other sources. From reading the record it is obvious that this is an impossible task for any jury. There were many witnesses talking about numerous other individuals. It is unreasonable to expect the jury, without guidance, to remember which of its impressions were created by direct evidence and which were created by hearsay.

Clearly, the best way to have prevented prejudice was bifurcation and the judge's instructions did not mitigate the damage caused by the court's failure to bifurcate the trial.

### C. Remedy

■ Admission of hearsay evidence can constitute reversible error. In *Bruton*, a new trial was necessary because inadmissible hearsay was presented to the jury, and the curative instruction was not sufficient to outweigh prejudice. 391 U.S. at 126, 88 S.Ct. at 1622. Similarly, this circuit has reversed district courts for improperly admitting certain hearsay statements. *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1562 (11th Cir.1991).

The hearsay evidence presented in this case was sufficiently prejudicial to merit remand. This circuit's predecessor has held that admission of hearsay requires a new trial if the jury may have relied upon it in reaching its verdict, *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 375 (5th Cir.1980).[1] In this case, the hearsay evidence admitted to show probable cause contained references to Chang's supposed financial backing of Fernandez, a known and convicted drug lord. It also contained references to a large number of reports detailing incidents of drug dealing near the 1012

address.[2] The jury may well have relied on this improperly admitted evidence in returning a verdict in favor of the government.

In addition, remand is warranted if a jury is invited to consider the truth of the hearsay. *Gulbranson v. Duluth, Missabe and Iron Range Railway Company*, 921 F.2d 139 (8th Cir.1990). As mentioned previously, the *Chang* jury was specifically invited to consider the hearsay evidence, albeit as mere "background" and "contextual" evidence.

In sum, the district court erred in refusing to bifurcate the trial. Given this failure to bifurcate, the inadequacy of the cautionary instruction, and the extent and importance of the hearsay statements, we are compelled to remand for a new trial in which the jury will not overhear the government's probable cause hearsay evidence.

## VIII. INNOCENT OWNER DEFENSE

■ In Chang's second claim, he challenges the implied definition of consent contained in the fourth special interrogatory presented to the jury. Because this court has not specifically defined consent for the purposes of establishing an innocent owner defense under section 881(a)(7), we now resolve this issue so that it can be properly addressed on remand.

Section 881(a)(7) explicitly permits a defense to forfeiture for those owners who can prove that they had no knowledge of illegal activity occurring on their property or who did not consent to that activity. Therefore, an owner can avoid forfeiture by proving either ignorance or non-consent.[3]

---

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. Reference to these reports prejudiced Claimant because the jury was not made aware that most of the incidents detailed in these reports occurred near, but not at, D's Grocery and that none occurred inside the store.

3. There is case law in other circuits that incorrectly reads Section 881(a)(7) to require an owner to prove both non-consent and ignorance in order to succeed in an innocent owner defense. The plain words of the statute, however, as well as case law, mandate that either ignorance or non-consent is sufficient to make out an innocent owner defense. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39, 99 S.Ct. 2326, 2330–31, 60 L.Ed.2d 931 (1979) (court cannot ignore the disjunctive "or" so as to rob the nouns it separates of their "independent and ordinary signifi-

At trial, Chang admitted that he was aware of the drug activity occurring on and around his property, but asserted an innocent owner defense based on his lack of consent to this activity. After closing arguments, the jury was presented with the following four special interrogatories concerning the innocent owner defense:

I.   Did the claimant, Roberto Chang, prove by a preponderance of the evidence that the subject *property was not used to commit* or to facilitate the commission of violation of the drug laws?

II.  Did the claimant, Roberto Chang, prove by a preponderance of the evidence that he had *no knowledge* that the subject property was being used to commit, or to facilitate the commission of violation of the drug laws?

III. Did the claimant, Roberto Chang, prove by a preponderance of the evidence that he did *not consent* to the subject property being used to commit, or to facilitate the commission of violation of the drug laws?

IV.  Did the claimant, Roberto Chang, prove by a preponderance of the evidence that he did *everything that he could reasonably be expected to do to prevent* the subject property from being used to commit, or to facilitate the commission of violation of the drug laws?

(Emphasis added). The jury answered "no" to all four questions. Consequently, the court ruled that claimant had failed to avoid forfeiture as an innocent owner.

Chang argues that the district court erred by presenting the fourth interrogatory to the jury because this interrogatory implies that a claimant can only avoid a section 881 forfeiture by proving that he made "all reasonable efforts" to prevent the illicit use of his property. Chang challenges the application of this standard, claiming that he is not required to make an "all reasonable efforts" showing in order to avoid an 881 forfeiture as an innocent owner. We disagree with Chang's interpretation of the standard. However, we agree with Chang that the district court failed to adequately instruct the jury as to the definition of consent.

### A.   *Calero–Toledo* Standard

The "all reasonable efforts" language is derived from *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974), in which property had been seized pursuant to a Puerto Rican forfeiture statute. In that case, the Supreme Court noted, in dictum, that it might be "difficult" to reject the constitutional claim of an owner whose property has been subject to forfeiture, when that owner has proven not only that he was uninvolved in and unaware of wrongful activity, but who has proven that he has done all that reasonably could be expected to prevent the proscribed use of his property. *Id.*

Although the *Calero–Toledo* dicta is not binding, it nevertheless indicates a definition of consent which this court may choose to apply to the 881(a)(7) innocent owner defense. Recently, this court chose to adopt the *Calero–Toledo* standard for purposes of defining the innocent owner exception contained in section 881(a)(6): "a claimant who has actual knowledge of the commingling of legitimate and drug funds may be spared forfeiture as an innocent owner if the claimant can prove that *everything reasonably possible was done*" to disentangle the property from the illegal activity. *United States v. 15603 85th Avenue North*, 933 F.2d 976, 982 (11th Cir.1991) (emphasis added). *See also 141st Street Corporation*, 911 F.2d 870, 879 (2nd Cir. 1990) (Given the extent of the current drug

cance"); *United States v. 6109 Grubb Road*, 886 F.2d 618, 625 (3rd Cir.1989) ("We must construe the language of the statute keeping in mind the congressional purpose in enacting forfeiture statutes and that Congress does not generally place language in a statute without purpose."). *See also United States v. 141st Street Corporation*, 911 F.2d 870, 878 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

problem, "defining 'consent' in section 881(a)(7) as the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use is entirely appropriate.").

*15603 85th Avenue North* dealt exclusively with a section 881(a)(6) forfeiture and did not directly address the issue of the appropriate standard to apply in a section 881(a)(7) situation. However, section 881(a)(6) parallels section 881(a)(7), providing for forfeiture of "moneys" and other valuable properties and containing an identically worded innocent ownership exception.[4] Indeed, when the innocent owner defense of 881(a)(7) is discussed in the legislative history, the 881(a)(6) defense is mentioned by way of comparison.[5] It is, therefore, appropriate to apply the section 881(a)(6) definition of consent to a section 881(a)(7) proceeding.

Thus, the district court did not err by presenting the jury with a special interrogatory asking the jury whether Chang had done "everything that he could reasonably be expected to do to prevent the subject property from being used to commit, or to facilitate the commission of violation of the drug laws." That question accurately reflects the law of this circuit: proof of nonconsent for the purposes of 881(a)(7) requires a claimant to show that he took all reasonable steps to prevent the illegal use of his property.

### B. Jury Instructions Re: Consent

■ At the time of Chang's trial, the Eleventh Circuit had not yet adopted the *Calero–Toledo* standard as it pertains to the innocent owner exceptions of 881(a)(6) and 881(a)(7). Therefore, when claimant questioned the legal propriety of the fourth interrogatory, the district judge himself was unsure what standard applied to 881(a)(7).[6]

Presumably because of this ambivalence over the appropriate standard, the trial judge failed to instruct the jury on the definition of consent. He did not allude to a "reasonable efforts" standard anywhere in his jury instructions. In fact, the judge modified a requested jury instruction to eliminate the language requiring claimant to do "all he could do to prevent the illegal use of the defendant real estate." In the end, the judge merely stated that the burden is on the claimant to prove that the "real property was used to facilitate the illegal trafficking of narcotics without the knowledge or consent of Roberto Chang." He then defined "facilitate" and "knowledge" but did not further discuss "consent." The only time "reasonable efforts" was mentioned was in the fourth interrogatory.

The ultimate determination of consent and the "reasonableness" of a claimant's actions are questions of fact to be answered by the factfinder, in this case, the jury. *United States v. 418 57th Street*, 922 F.2d 129, 132 (2nd Cir.1990). However, the trial judge bears the exclusive burden of properly instructing the jury as to any relevant legal principles necessary to the proper determination of the case. *Jones v. Miles*,

---

**4.** 881(a)(6) provides for forfeiture of:

All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph to the extent of the interest of an owner by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**5.** Section 881(a)(7) "would also include an 'innocent owner' exception like that now included

in those provisions permitting the civil forfeiture of certain vehicles and moneys or securities. [881(a)(6) ]." Senate Report of Section 306, 98th Cong., 2nd Sess. in 1984 U.S.C.C.A.N. 3182, 3398.

**6.** During discussion with Chang's counsel concerning the fourth interrogatory, the judge opined that *Calero–Toledo* did not require the "all reasonable efforts" standard. In fact, he suspected that if the Supreme Court were confronted with the question, it would not read an "all reasonable efforts" standard into section 881(a)(7). He included the fourth interrogatory, however, "for fear that [Congress] might change the law before it gets to the Supreme Court."

656 F.2d 103, 107 n. 6 (5th Cir. Unit B, 1981).[7] In the instant case, the trial judge failed to fulfill this duty, leaving the jury inadequately instructed concerning the definition of consent and the "all reasonable efforts" requirement.

The district court should have defined consent for the jury as a failure to take all reasonable steps to prevent the illicit use of one's property. Further, that court should have made clear that the *Calero* standard does not require that the claimant make all efforts, he need merely make all reasonable efforts. Although an innocent, knowledgeable owner must affirmatively demonstrate his lack of consent, "reasonableness limits the burden." *United States v. Forfeiture, Stop Six Center*, 781 F.Supp. 1200, 1209 n. 6 (N.D.Texas 1991).[8] Indeed, an owner cannot "reasonably" be expected to succeed at preventing illegal use of his property when the police have been incapable of doing the same. Courts "do not expect the common land owner to eradicate a problem which our able law enforcement organizations cannot control." *Id. See also United States v. 171–02 Liberty Avenue*, 710 F.Supp. 46, 51 (E.D.N.Y.1989); *U.S. v. Sixty Acres in Etowah County*, 930 F.2d 857, 861, n. 2 (11th Cir.1991).

The reasonable efforts criteria can be satisfied by contacting and cooperating with law enforcement authorities, especially when a claimant is unable to halt the drug traffic on his own. "Although we do not require claimants to work alongside these agents in their effort to combat drug dealers, we insist that claimants under no immediate threat of reprisal either communicate their knowledge to police, or attempt to remove themselves from the scene of illegal activity." *Etowah*, 930 F.2d at 861.

On remand, the district court should properly instruct the jury on the definition of consent and the reasonable efforts necessary to avoid a section 881(a)(7) forfeiture.

## IX. CONCLUSION

For the foregoing reasons, we REMAND the forfeiture action for a new trial in accordance with this opinion.[9]

---

**7.** The Eleventh Circuit has adopted as binding precedent decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982).

**8.** In the past, efforts similar to Chang's efforts have been deemed reasonable and hence sufficient to avoid an 881(a)(7) forfeiture. In *908 T Street, N.W.*, claimant took all reasonable steps to prevent illicit use of his premises when he "nailed windows shut, put locks on the doors,

kicked his drug-addicted children out of the house, and ... encouraged his drug-addicted children to attend drug treatment programs." 770 F.Supp. at 703.

**9.** Claimant requests remand on two other grounds, (1) claimant's motion for a directed verdict and (2) potentially improper statement by the government during closing arguments. We need not address these claims given our decision to remand for failure to bifurcate.